826 So.2d 500 (2002)
Donald BERGMAN, Bonnie Bergman and Donald Bergman Architect, P.A., Appellants,
v.
Dan DeIULIO and Stephanie DeIulio, Appellees.
No. 4D01-1264.
District Court of Appeal of Florida, Fourth District.
September 25, 2002.
*502 Robert J. Gorman of Robert J. Gorman, P.A., Fort Pierce, for appellants.
Lee E. Muschott of Lee E. Muschott P.A., Fort Pierce, for appellees.
MAY, J.
This is a tale of an accountant and his friend, an architect, who shared an idea, but never agreed on how to implement it. Neither the architect's plans nor the accountant's figures could form the requisite meeting of the minds to establish an enforceable agreement. The trial court found that the two had "entered into an executory agreement to enter into a partnership at a future time" and calculated damages and set offs. Because Florida law will not enforce "agreements to agree in the future," we reverse.
Dan DeIulio is an accountant. Among his friends was Donald Bergman, an architect. The accountant and his wife purchased property with the intention of remodeling the house into office space.
He sought the advice of his friend the architect, who began to draft remodeling plans. Initially, the architect indicated that he was interested in renting space in the newly remodeled office. As time went on, a plan began to develop for the architect to become a part owner in the project. New drawings were undertaken, which called for demolition of the existing structure.
The plans continued to be adjusted as new ideas surfaced, but the parties never reached agreement on the details of the architect's buy-in, the final design of the building, their respective interests in the project, the use of the building, and the nature of their business relationship. The accountant paid the architect a total of $5,000 for work performed and independently applied for a construction loan.
The accountant calculated the architect's buy-in to be $24,407.33. The architect paid the accountant three installments, totaling $12,000. The accountant then increased the buy-in figure, resulting in a balance of $13,285.65 to be paid by the architect. The architect paid an additional $8,000 toward the buy-in and suggested that they memorialize their understanding by a written contract. An agreement was drafted by a lawyer. Despite an exchange of edits to the document, neither party signed it.
At this point, the architect requested his "buy-in" money back and submitted a bill for his services. The accountant didn't return the funds and made no further payments for services rendered. By this time, the building had been demolished.
The architect filed suit. The complaint alleged seven counts. In count I, the architect sought a declaratory judgment, asking the court to determine whether a partnership existed, and if so, to define its terms. Count II sought recovery of the $20,000 paid by the architect for the buy-in on the theory that it was money loaned to the accountant. Count III sought damages for architectural services performed. Count IV asked for an equitable lien on the property.
The remaining counts sought relief in the event the trial court determined that a partnership did exist. Count V asked for a determination of a buyout price for the partnership's interest. Count VI sought damages for the accountant's failure to perform partnership duties. Count VII asked for a constructive trust in favor of the partnership on the property, which had at all times been titled in the name of the accountant and his wife.
The accountant alleged two affirmative defenses: estoppel and a failure of consideration. He also counterclaimed for breach of an oral contract to improve and *503 utilize real property, and for wrongful disassociation from a partnership under section 620.8602(2)(b), Florida Statutes (2001).
The trial court, sitting non-jury, determined that there was an insufficient meeting of the minds to form an enforceable contract. However, it found that the parties entered "into an executory agreement to enter into a partnership at a future time for the construction of the office building." The court then determined that the accountant had detrimentally relied upon the architect's representations and estopped the architect from denying that an agreement existed.
The court further found that the architect breached the "agreement to agree" by not paying the full amount of the buy-in price, failing to participate in the construction loan, failing to sign the agreement, and withdrawing from the partnership. The court assessed damages against the architect for $32,155.38, which included replacement value of the structure that existed prior to its demolition and engineering fees paid by the accountant, less the $20,000 paid toward the buy-in. The trial court also found that the $5,000 paid by the accountant to the architect covered all services rendered.
We begin at the beginning. Was there an enforceable contract? We agree with the trial court that there was an insufficient meeting of the minds to form an enforceable contract. "To be enforceable, an agreement must be sufficiently specific, and reflect assent by the parties to all essential terms.... Where essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract." Suggs v. Defranco's, Inc., 626 So.2d 1100, 1100 (Fla. 1st DCA 1993). See also Theocles v. Lytras, 518 So.2d 936 (Fla. 3d DCA 1988).
In addition, "a properly executed written contract is a prerequisite to any action in certain transactions to include `any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them, or for any lease thereof for a period of longer than 1 year ...'" Coral Way Properties, Ltd. v. Roses, 565 So.2d 372, 374 (Fla. 3d DCA 1990); § 725.01, Fla. Stat. (2002). The alleged partnership agreement in this case involved an interest in the land and a future office building. Thus, absent a writing, even if there had been a meeting of the minds, it was not an agreement that could be enforced. Id.
Contract law, however, does provide a remedy for situations such as the one in which the architect and the accountant now find themselves. That remedy sounds in quantum meruit or quasi-contract. Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., 695 So.2d 383 (Fla. 4th DCA 1997).
It is well settled that where services are rendered by one person for another which are knowingly and voluntarily accepted, the law presumes that such services are given and received in expectation of being paid for, and will imply a promise to pay what they are reasonably worth.
Symon v. J. Rolfe Davis, Inc., 245 So.2d 278, 279 (Fla. 4th DCA 1971). Count III of the architect's complaint alleged such a claim and was therefore viable. However, the trial court found that the $5,000 paid by the accountant fully compensated the architect for services rendered.
This leaves Count II of the plaintiff's complaint, which alleged a loan of $20,000 to the accountant. The trial court found that the money should be returned to the architect. That finding should remain intact.
*504 The accountant filed two counterclaims. The first claim alleged a breach of contract. Just as the architect's attempt to establish a partnership failed due to the lack of definitive terms and the statute of frauds, so too must the accountant's claim for breach of contract fail. If there was no enforceable agreement, there could be no breach.
The accountant's second counterclaim alleged damages for the architect's wrongful disassociation from the partnership, pursuant to section 620.8602(2)(b), Florida Statutes (2001). The trial court made no findings with regard to this counterclaim. Instead, the final judgment appears to rely upon the theory of estoppel in awarding damages to the accountant.
Even though the accountant pled estoppel as an affirmative defense, this theory was never pled as a claim for affirmative relief. "Equitable estoppel thus functions as a shield, not a sword...." Major League Baseball v. Morsani, 790 So.2d 1071, 1077 (Fla.2001). In this case, it was pled as a shield; the trial court erred in using it as a sword to award damages to the accountant.
The estoppel theory of recovery must fail for two additional reasons. First, our supreme court has long held that estoppel cannot be a "judicial counteraction to the legislatively created statute of frauds." Coral Way Props., Ltd. v. Roses, 565 So.2d 372, 374 (Fla. 3d DCA 1990) (citing Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So.2d 777 (Fla.1966)). And second, "a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built." S. Inv. Corp. v. Norton, 57 So.2d 1 (Fla.1952).
Even if the accountant had pled an affirmative claim for relief based upon promissory estoppel, it would have failed. As noted in W.R. Grace and Co. v. Geodata Services, Inc., 547 So.2d 919 (Fla.1989), to apply the doctrine of promissory estoppel to facts which are not sufficiently definite "in time or term or reasonableness" would "wreak havoc with basic contract law." Id. at 925. We find the same to be true here. The same indefiniteness of the terms necessary to establish an enforceable contract were also the Achilles heel of the accountant's and trial court's reliance on the theory of estoppel.
For these reasons, we reverse and remand this case with instructions for the trial court to vacate the final judgment and enter a judgment for the architect in the amount of $20,000.
FARMER and KLEIN, JJ., concur.