NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GREENBROOK NH, LLC; GREYSTONE )
HEALTHCARE MANAGEMENT CORP.; )
MONIKA K. PETERS; and MICHELLE E. )
UPTON (as to APOLLO HEALTH AND )
REHABILITATION CENTER), )
                 )
         Appellants, )
                 )
v. )        Case No. 2D13-4009
                 )
THE ESTATE OF ALENE M. SAYRE, )
by and through ANNETTE M. RAYMOND, )
Personal Representative, )
                 )
         Appellee. )
_____)

Opinion filed November 7, 2014.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pinellas County;
Anthony Rondolino, Judge.

Thomas A. Valdez and Sheila K. Nicholson
of Quintairos, Prieto Wood & Boyer, P.A.,
Tampa, for Appellants.

Isaac R. Ruiz-Carus, Donna K. Hanes, and
Megan L. Gisclar of Wilkes & McHugh, P.A.,
Tampa, for Appellee.


LaROSE, Judge.

Greenbrook NH, LLC, et al. (Greenbrook), appeals the trial court's nonfinal order denying its motion to dismiss and compel arbitration and motion to stay proceedings. See § 682.03, Fla .Stat. (2010) (delineating "[p]roceedings to compel and to stay arbitration"). We have jurisdiction, see Fla. R. App. P. 9.130(a)(3)(C)(iv), and reverse.

Greenbrook is a skilled nursing facility in St. Petersburg. Alene Sayre lived there for most of 2011. Thereafter, Annette Raymond, Ms. Sayre's daughter, as personal representative of her mother's estate, sued Greenbrook for negligence and for violation of her mother's nursing home residents' rights. See §§ 400.022-.023, Fla. Stat. (2010) (addressing residents' rights and civil enforcement).

Upon Ms. Sayre's admission to Greenbrook, Ms. Raymond, as her mother's legally authorized representative, signed an arbitration agreement requiring Ms. Sayre to arbitrate all disputes that may arise from her stay at Greenbrook. After Ms. Raymond filed suit, Greenbrook sought to enforce that agreement.

At the hearing on the motion to compel arbitration, Greenbrook presented a copy of the signed arbitration agreement. Three portions were obscured -- the title and portions of two terms.[1] Greenbrook also presented to the trial court a complete, but unsigned, copy of the form arbitration agreement. Ms. Raymond argued that the obscured portions rendered the agreement incomplete and, therefore, invalid. The trial court agreed and denied the motion to compel arbitration.

Greenbrook contends, here, that, despite the photocopying error, the arbitration agreement is valid because the omitted portions do not alter the parties'

---

[1]The photocopying error appears to be due to copying that resulted in the top two or three lines of all three pages of the agreement being obscured.

intent to create a binding contract to arbitrate. According to Greenbrook, the remaining terms of the agreement were sufficiently clear and definite to form a contract. We agree.

Appellate review of the trial court's factual findings involves determining whether competent, substantial evidence supports the findings. Zephyr Haven Health & Rehab Ctr., Inc. v. Hardin, 122 So. 3d 916, 919 (Fla. 2d DCA 2013), review denied, 135 So. 3d 287 (Fla. 2014); Woebse v. Health Care & Ret. Corp. of Am., 977 So. 2d 630, 632 (Fla. 2d DCA 2008). "[T]he standard of review applicable to the trial court's construction of the arbitration provision and to its application of the law to the facts . . . is de novo review." Woebse, 977 So. 2d at 632. In assessing the enforceability of an arbitration agreement, we inquire "(1) whether there is a valid written agreement to arbitrate, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived." Bland, ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So. 2d 252, 255 (Fla. 2d DCA 2006), abrogated on other grounds by Shotts v. OP Winter Haven, Inc., 86 So. 3d 456 (Fla. 2011). This case involves only the first issue—whether, despite a photocopying error, the arbitration agreement is valid.

There can be no quarrel that a contract cannot stand if it is missing the "essential terms of an agreement." Bergman v. DeIulio, 826 So. 2d 500, 503 (Fla. 4th DCA 2002). The essential terms of an arbitration agreement include "the form and procedure for arbitration, the number of arbitrators, how the arbitrators were to be selected, or . . . the issues to be decided by arbitration." Malone & Hyde, Inc. v. RTC Transp., Inc., 515 So. 2d 365, 366 (Fla. 4th DCA 1987). These factors are not exhaustive; they offer an outline of an arbitration agreement's basic terms. The terms must be definite enough so that the parties have some idea as to what matters are to be

- 3 -

arbitrated and provide some procedure by which arbitration is to be effected. See id. The polestar guiding us in the construction of a written arbitration agreement, as with any contract, is the parties' intent. Crastvell Trading Ltd. v. Marengere, 90 So. 3d 349, 353 (Fla. 4th DCA 2012). We discern that intent "from the total writing and not particular provisions or disjointed parts." SCG Harbourwood, LLC v. Hanyan, 93 So. 3d 1197, 1200 (Fla. 2d DCA 2012).

The trial court found that the arbitration agreement's obscured portions were material, thus making the agreement infirm. The missing language included the title classifying the document as an arbitration agreement, the three-arbitrator panel's decision-making process, and a portion of a severability clause. Even with these supposed deficiencies, the agreement contained clarifying and supplementary terms, establishing a valid and enforceable agreement.

First, we conclude that the title was not necessary; even a passing review of the document established that it was an arbitration agreement. Second, the executed agreement omitted the last step of the arbitration panel process, when applicable. The unobscured provision provided in part,

> To the extent the parties cannot agree upon a single arbitrator, each side shall choose a single non-neutral arbitrator (a total of two), who will in turn choose a third arbitrator to serve as a neutral/umpire. In the latter case, all three arbitrators shall participate in the hearing but the . . .

The obscured portion continued,

> single arbitrator will decide the controversy, and the decision shall be binding on all parties, and may be enforced by a court of competent jurisdiction.

With or without the non-neutral arbitrators, the agreement, even if obscured, contemplates that the neutral arbitrator/umpire will be the ultimate decision maker. In

another provision of the agreement, the parties adopted the Florida Arbitration Code. See §§ 682.01-.22. Section 682.04 provides, in part, that if the agreement on a panel of arbitrators fails or cannot be followed, the court, on application of a party to the agreement, shall appoint one or more arbitrators or an umpire. This statutory provision, in light of the agreement's obscured language, would cure or fill the gap should the need for a neutral umpire become an issue. Third, it was obvious that the agreement contained a severability clause. Indeed, read as whole, the arbitration agreement, even as obscured, informed the parties that the agreement would not fail if a court deemed any portion invalid. See also § 682.22.

If a party has "a meaningful opportunity to review the arbitration agreement, to obtain guidance, and to accept or reject the terms of the arbitration agreement," the agreement is enforceable. Tampa HCP, LLC v. Bachor, 72 So. 3d 323, 328 (Fla. 2d DCA 2011). Ms. Raymond had an opportunity to review the arbitration agreement before signing it for her mother. The record is unclear if Greenbrook presented Ms. Raymond with an obscured arbitration agreement, or if the photocopying error occurred after signing. If Ms. Raymond saw the agreement's omitted and obscured portions, she could have asked for a clean copy to sign instead of signing a clearly obscured copy with portions omitted. Ms. Raymond could have refused to sign the arbitration agreement and demanded a clean copy. If, however, the agreement included the now omitted portions, Ms. Raymond had the opportunity to review the document, signing with the clear intent to arbitrate potential disputes. On these facts, the agreement was valid and enforceable. Accordingly, we reverse the order denying the motion to compel arbitration.

Reversed and remanded with directions to grant the motion to compel arbitration.

CASANUEVA and SLEET, JJ., Concur.