NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


THOMAS R. DAVIS, JR., as Personal )
Representative of the Estate of Cathleen )
Sandy, Deceased, )
)
        Appellant, )
)
v. )    Case No. 2D14-2079
)
HEARTHSTONE SENIOR COMMUNITIES, )
INC.; BRIGID HEALTH MANAGEMENT, )
LLC n/k/a BRIGID HEALTH SERVICES, )
LLC; AIRAMID FLORIDA, LLC; AIRAMID )
HEALTH CONSULTING, LLC; )
SUN COAST NURSING CENTERS, INC.; )
DEBRA HOWE; and ELLIS J. WILLIAMS )
(as to LAKELAND HILLS CENTER), )
)
        Appellees. )
_____ )

Opinion filed January 23, 2015.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Polk County;
Ellen S. Masters, Judge.

Isaac R. Ruiz-Carus, Kathleen Clark Knight,
and Megan L. Gisclar of Wilkes & McHugh,
P.A., Tampa, for Appellant.

James D. Moriarty of Spector Gadon &
Rosen, LLP, St. Petersburg, for Appellees.

DAVIS, Chief Judge.

Thomas R. Davis, as personal representative of the Estate of Cathleen Sandy, challenges the trial court's order granting the motion to compel arbitration filed by Hearthstone Senior Communities, Inc., and its related entities (the nursing home). Because the record does not include sufficient facts to support the order, we must reverse.

Upon Ms. Sandy's entering Lakeland Hills Center, she signed several documents as part of the admissions process, including one that was alleged to be an arbitration agreement. While subsequently residing at the nursing home, she suffered certain injuries and eventually died. Mr. Davis, acting on behalf of the Estate, filed an action against the nursing home alleging violations of Ms. Sandy's rights as provided for in chapter 400, Florida Statutes. The nursing home then filed a motion to compel arbitration pursuant to the arbitration agreement signed during the admissions process.

During discovery, the Estate requested that the nursing home provide a complete copy of the set of documents signed by Ms. Sandy upon her admission. But the documents provided included only the signature page of what was alleged to be the arbitration agreement. Witnesses testified that the original arbitration document consisted of seven pages but that it was the practice of the nursing home to retain in its file only the signature page of the arbitration agreement and to provide the first six pages to the resident. Based on the absence of the original six pages, the Estate argued that the nursing home had failed to prove that there was a binding, valid, and enforceable arbitration agreement.

At the hearing, the signature page was admitted into evidence and contained the following language, which appears to be a continuation of a statement beginning on the previous, unadmitted page:

> from fully reviewing the arbitration agreement and the informational video, that I have been provided an opportunity to seek the advice of counsel prior to signing this agreement and have no questions about the information contained in this arbitration agreement or in the informational video and have agreed to arbitration freely and voluntarily.

Based on this language, the nursing home argued below, and argues now on appeal, that by signing the agreement Ms. Sandy clearly agreed to arbitration.

The nursing home presented the testimony of a former employee who supervised the admissions process. She testified that Ms. Sandy signed the last page of the arbitration agreement and that it was the nursing home's practice to retain only the signature page. However, when counsel for the nursing home presented her with a copy of the first six pages of the arbitration agreement purportedly used by the nursing home, she was unable to verify the terms or to assure the court that this agreement was the agreement that was in standard use at the nursing home at the time of Ms. Sandy's admission. Because that witness could not verify the document, the trial court sustained the Estate's objection to the admission of the six pages containing the terms of the arbitration agreement. The nursing home did not call other witnesses and did not further attempt to admit into evidence the first six pages of the agreement.

The trial court acknowledged its frustration at what it recognized was missing from the evidence at the close of the hearing by stating, "I don't know why defense counsel didn't just bring somebody to say[,] 'These were [the six pages] we were using that would have been attached [to page seven] on this particular date.' But

Defendant didn't do that, and that's causing a little frustration for me this morning." The trial court concluded that Ms. Sandy did sign the agreement and that the complete arbitration agreement does exist but that the "essential terms have not been introduced into evidence." Stating that it was satisfied, however, that the nursing home could show the complete terms of the arbitration agreement, the trial court granted the motion to compel arbitration.

The Estate suggested below that it was prejudiced by this ruling because there may be objectionable terms of the agreement that it will be precluded from litigating due to the failure of the nursing home to present the full agreement at the hearing. In an attempt to provide the Estate relief from this potential prejudice, the trial court suggested that if the nursing home could subsequently provide a copy of the first six pages of the agreement in use at the time Ms. Sandy signed the agreement, the trial court would entertain a motion for reconsideration filed by the Estate seeking review of any particular terms of the agreement. No such motion was filed, and the Estate now appeals the order granting the motion to compel.

To enforce the arbitration agreement, the nursing home had to show (1) that there is a valid written agreement to arbitrate, (2) that an arbitrable issue exists, and (3) that the right to arbitration has not been waived. See Greenbrook NH, LLC v. Estate of Sayre, 150 So. 3d 878, 878 (Fla. 2d DCA 2014). The issue raised by this appeal is related to whether the nursing home met its burden to show the first requirement—the existence of a valid written agreement. We conclude that they did not meet this burden based on the evidence introduced on the record. As described in Greenbrook, "[t]here can be no quarrel that a contract cannot stand if it is missing the essential terms of an

- 4 -

agreement." Id. (internal quotation marks omitted). In Malone & Hyde, Inc. v. RTC Transportation, Inc., 515 So. 2d 365, 366 (Fla. 4th DCA 1987), the court defined the essential terms of an arbitration agreement to include "the form and procedure for arbitration, the number of arbitrators, how the arbitrators were to be selected, or . . . the issues to be decided by arbitration." In Greenbrook, we opined that "[t]he terms must be definite enough so that the parties have some idea as to what matters are to be arbitrated and provide some procedure by which arbitration is to be effected." 150 So. 3d at 878.

Our record does not include any of the terms of the alleged arbitration agreement. It therefore fails to indicate whether the arbitration is binding or nonbinding, how many arbitrators are to be used, how the arbitrator will be selected, or what issues are to be included. Although these details may be included in the missing six pages and may become available as part of the record on remand, as of the time the trial court granted the motion to compel arbitration, the record was devoid of these details, and thus the nursing home failed to meet the first requirement to enforce the agreement. See id. Based on the evidence of record, there is no way the trial court could determine the intent of the parties at the time they entered the agreement.[1] Accordingly, under Greenbrook, the trial court erred in granting the motion to compel. We therefore reverse the order compelling arbitration and remand for further proceedings consistent with this opinion.

---

[1]We recognize that there are circumstances under which the trial court may determine from context that certain missing elements in an arbitration agreement do exist. See Fla. R. Civ. P. 1.830(a)(2); see also §§ 682.01-.22, Fla. Stat. However, in this case, the signature page of the agreement contains no terms from which the court could otherwise infer the intent of the parties.

Reversed and remanded.


VILLANTI and BLACK, JJ., Concur.