IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

NCI, LLC F/K/A AUTO GLASS STORE
LLC A/A/O DORA NOE,

      Appellant,

v.
                                   Case No.  5D21-1282
                                   LT Case No. 2019-SC-037205-O

PROGRESSIVE SELECT INSURANCE
COMPANY,

      Appellee.

_____/

Opinion filed November 4, 2022

Nonfinal Appeal from the County Court
for Orange County,
Carly S. Wish, Judge.

Earl I. Higgs, Jr., of Higgs Law,
P.A., Orlando, for Appellant.

Lissette M. Gonzalez, of Cole,
Scott & Kissane, P.A., Miami, for
Appellee.

TRAVER, J.

NCI, LLC, formerly known as Auto Glass Store LLC, as assignee of Dora Noe ("NCI" and "the insured," respectively), appeals the trial court's order dismissing NCI's complaint without prejudice. We have jurisdiction. *See* Fla. R. App. P. 9.130(a)(3)(C)(iv). The trial court ordered NCI and Progressive Select Insurance Company ("Progressive") to comply with the operative car insurance policy's appraisal provision. Because this provision is valid, an appraisable issue exists, and Progressive did not waive its right to appraisal, we affirm.

## I. Background

The insured sustained damage to her windshield and retained NCI to fix it. NCI replaced the windshield, and in return, the insured assigned all benefits under her policy to NCI. NCI invoiced Progressive for the repairs; Progressive acknowledged coverage but did not pay the full invoice amount.

Thereafter, NCI sued Progressive for breach of contract and declaratory judgment. It alleged Progressive had breached the policy by failing to pay "all the benefits due." It also sought a declaration that the appraisal provision was invalid, an appraisable issue did not exist, and Progressive waived its right to appraisal.

2

Progressive moved to dismiss, arguing that NCI had failed to comply with the policy's appraisal provision. Alternatively, it asked the trial court to stay the case while appraisal occurred. It also sought dismissal because NCI lacked standing. The appraisal provision outlined the applicability, process, time frame, and costs of appraisal, which would ultimately result in a binding determination on the amount Progressive owed NCI for the windshield replacement:

> If we cannot agree with **you** on the amount of loss, then **we** or **you** may demand an appraisal of the loss. However, mediation, if desired, must be requested prior to demanding appraisal. Within 30 days of any demand for an appraisal, each party shall appoint a competent and impartial appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to an impartial umpire chosen by the appraisers, who is both competent and a qualified expert in the subject matter. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in a county where **you** reside, select an umpire. The appraisers and the umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under the policy by agreeing to an appraisal.

3

The policy also contains a clause entitled, "Legal Action Against Us," which states that "**[w]e** may not be sued unless there is full compliance with all the terms of this policy."

Following a non-evidentiary hearing, the trial court determined the policy's appraisal provision was valid, an appraisable issue existed, and Progressive did not waive appraisal. It dismissed the case without prejudice for the parties to comply with the policy's appraisal provision. It memorialized its findings in a detailed order that addressed and discarded each of NCI's arguments.

## II.    Standard of Review

We review the trial court's non-final order compelling appraisal de novo. *See Underwriters at Lloyd's, London v. Sorgenfrei*, 278 So. 3d 930, 931 (Fla. 5th DCA 2019). We also interpret an insurance policy de novo. *See Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 491 (Fla. 5th DCA 2014). We accord great deference, however, to a trial court's dismissal of a declaratory judgment action, and we review this decision for an abuse of discretion. *See Palumbo v. Moore*, 777 So. 2d 1177, 1178 (Fla. 5th DCA 2001).

4

## III.    Analysis

NCI raises several arguments on appeal, which mostly attack the appraisal clause's validity.  One is unpreserved,[1] and none have merit.[2]  It argues the appraisal clause: 1) is ambiguous because it indicated appraisal would be binding on the parties, but it also contained a reservation of rights clause; 2) does not describe the procedures governing appraisal, likening it to an unenforceable arbitration agreement; 3) is unenforceable because it violates the public policy behind Florida's insurance scheme, which awards attorney's fees to an insured who wins a suit against their insurer; 4) violates NCI's fundamental rights of access to the courts, due process, and a jury trial under Florida's Constitution; and 5) violates the "Prohibitive Cost Doctrine," contending that appraisal should not occur because the process would be more expensive than the windshield replacement itself.  NCI also insists that no appraisable issue exists because Progressive had not actually disputed

---

[1] NCI argues for the first time on appeal that because it pled a facially sufficient cause of action for breach of contract in its complaint, the trial court could not grant Progressive's motion to dismiss.  NCI did not preserve this argument by raising it before the trial court. Accordingly, we do not consider this argument on appeal.  *See Bryant v. State*, 901 So. 2d 810, 822 (Fla. 2005).

[2] This includes NCI's declaratory judgment claim, which is inextricably intertwined with its breach of contract claim. We affirm the dismissal without prejudice of this claim without further discussion.

5

the amount of loss.  Finally, NCI claims Progressive had waived its appraisal rights by challenging NCI's standing to sue in its motion to dismiss.

We consider these arguments in turn.  First, however, we outline some general propositions relating to appraisals and contract interpretation. "Appraisals are creatures of contract and the subject or scope of appraisal depends on the contract provision." *See Branco*, 148 So. 3d at 491.  The goal of appraisal provisions is to settle disputes without litigation.  *See SafePoint Ins. v. Hallet*, 322 So. 3d 204, 207 (Fla. 5th DCA 2021).  Courts construe motions to compel appraisal like motions to compel arbitration.  *See Fla. Ins. Guar. Ass'n v. Castilla*, 18 So. 3d 703, 704 (Fla. 4th DCA 2009) (citing *Allstate Ins. v. Suarez*, 786 So. 2d 645, 646 (Fla. 3d DCA 2001)).  The Florida Supreme Court has held that courts must consider three elements in ruling whether a dispute is arbitrable: 1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether a party has waived the right to arbitrate.  *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).  The parties agree that these elements guide our review of the trial court's order compelling appraisal.  *See, e.g., Fla. Select Ins. v. Keelean*, 727 So. 2d 1131, 1132 (Fla. 2d DCA 1999) (applying three-element arbitrability test to appraisal provision), *disapproved on other*

6

*grounds by Johnson v. Nationwide Mut. Ins.*, 828 So. 2d 1021, 1026 (Fla. 2002).

**A.     A Valid Written Appraisal Provision Exists.**

NCI's five separate challenges to the policy's appraisal provision are unavailing.  It is neither vague nor subject to multiple meanings.  We can easily reconcile the last sentence of this section, which allows the parties to reserve their rights under the policy, with the remainder of the appraisal provision.  Even if the appraisal provision lacked basic arbitration-style procedures—which it does not—this absence would not void the provision. The appraisal provision is neither void for public policy reasons nor violative of NCI's fundamental rights.  Finally, we decline to extend the Prohibitive Cost Doctrine to apply to the appraisal process.

> *1.     The Reservation of Rights Clause Does Not Render the Appraisal Provision Ambiguous.*

The appraisal provision is unambiguous.  NCI claims the appraisal provision is vague and subject to multiple meanings because it reserves litigation rights to the parties even though it states the loss amount resolved through appraisal "will be binding."  To NCI, this means that it should be able to challenge the amount of Progressive's partial payment via its breach of contract claim and outside the appraisal process.  But this is not a permissible reading of the policy.  In construing an insurance policy, we will

7

read the policy as a whole, attempting to give every provision its full meaning and effect. *See Mendota Ins. v. At Home Auto Glass, LLC*, 346 So. 3d 96, 98 (Fla. 5th DCA 2022) (citing *Auto-Owners Ins. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). Where provisions in a contract appear to conflict, we will reconcile any apparent inconsistencies, if possible. *See Excelsior Ins. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979). We cannot rewrite policy terms, and when an insurance policy is unambiguous, we will give it effect as written. *See Hallet*, 322 So. 3d at 207.

Here, we can easily reconcile the appraisal provision's reservation of rights clause with the binding appraisal clause. This reconciliation is reflective of the nature of appraisal, which allows parties to settle a damage amount while still preserving the ability to raise defenses and other matters through litigation. *See State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1288 (Fla. 1996). Our sister court has analyzed the same appraisal provision and reached the same conclusion. *See Progressive Am. Ins. v. Glassmetics, LLC*, 343 So. 3d 613, 625–26 (Fla. 2d DCA 2022). If we were to construe the appraisal provision as NCI urges, it would effectively be eliminated from the policy. This reading would transform an agreed-upon and binding process to determine the amount of loss into an optional choice between appraisal and litigation. This is not a reasonable interpretation. *See Mendota*, 346 So. 3d

8

at 99 ("[F]or an ambiguity to exist, the policy language must be susceptible to more than one *reasonable* interpretation."). For this reason, NCI's first challenge to the appraisal clause's validity fails.

### 2. The Appraisal Provision Contains Adequate Procedures.

The policy's appraisal process is neither ambiguous nor unenforceable because it omits essential procedural terms. NCI contends that the appraisal provision is vague because it does not describe "any rules or procedures that would govern appraisal." Citing *Greenbrook NH, LLC v. Estate of Sayre*, 150 So. 3d 878 (Fla. 2d DCA 2014), NCI argues that because arbitration agreements must outline these procedures to be enforceable, so should appraisal provisions. This argument has two problems. First, appraisal is— by its nature—a different process than arbitration. *See generally Citizens Prop. Ins. v. Mango Hill #6 Condo. Ass'n*, 117 So. 3d 1226, 1229–30 (Fla. 3d DCA 2013) (describing differences between appraisal and arbitration). Unlike the quasi-judicial nature of arbitration, appraisal is an "informal process." *See Allstate Ins. v. Suarez*, 833 So. 2d 762, 765 (Fla. 2002); *see also Glassmetics*, 343 So. 3d at 623 ("We conclude that the procedures for arbitration are not applicable to appraisal based on *Suarez* and the differences between arbitration and appraisal as set out in *Mango Hill*."). Once a party to an insurance contract properly invokes appraisal, the parties

9

should conduct those proceedings in accord with the agreed-on policy provisions. *Suarez*, 833 So. 2d at 765.

Second, the policy's appraisal provision contains numerous processes characteristic of an enforceable arbitration agreement, much less a more informal appraisal provision. Here, the policy's appraisal provision outlines: a) when appraisal can occur; b) a procedure for the selection of the appraisers; c) a deadline for the appointment of an appraiser and notification to the opposing party; d) a procedure if the parties' respective appraisers fail to agree on the amount of the loss; e) the qualifications of an umpire and the procedure for appointing one; and f) provisions for payment of the appraisers, umpire, and other appraisal expenses. This appraisal provision is more detailed than the one the *Suarez* Court found enforceable. *See id.* at 762–63. In this sense, NCI's contention that the appraisal provision lacks *any* procedures is indefensible.

Further, its reliance on *Greenbrook* is misplaced. The *Greenbrook* court found an arbitration agreement enforceable even though portions of the agreement were obscured. *See* 150 So. 3d at 881. It explained that the essential terms of an arbitration agreement included the "form and procedure for arbitration, the number of arbitrators, how the arbitrators were to be selected, or the issues to be decided by arbitration." *Id.* (quoting *Malone &*

10

*Hyde, Inc. v. RTC Transp., Inc.*, 515 So. 2d 365, 366 (Fla. 4th DCA 1987)).

It emphasized these factors were not exhaustive, but they were sufficient

and definite because they informed the parties "what matters are to be

arbitrated and provide some procedure by which arbitration is to be effected."

*Id.* Even if appraisal were not an informal process, we fail to see how the

parties' appraisal policy falls short of this standard.

> 3.      *The Appraisal Provision Does Not Violate Public Policy.*

We similarly reject NCI's suggestion that the appraisal provision

violates the public policy behind section 627.428, Florida Statutes (2021).

This statute permits the award of reasonable attorney's fees to an insured if

she prevails in litigation against the insurer. It does not reference appraisal.

We have recently addressed and discarded NCI's argument in a nearly

identical context. *See Mendota*, 346 So. 3d at 100.[3] We observed that

courts have awarded fees and costs to an insured following the appraisal

process. *See id.* (citing *First Floridian Auto & Home Ins. v. Myrick*, 969 So.

2d 1121, 1122 (Fla. 2d DCA 2007)); *see also Lewis v. Universal Prop. & Cas.

Ins.*, 13 So. 3d 1079, 1081 (Fla. 4th DCA 2009); *Jerkins v. USF & G Specialty

Ins.*, 982 So. 2d 15, 18 (Fla. 5th DCA 2008). This undermines NCI's

---

[3] NCI did not disregard this decision; we issued it after NCI briefed this case.

11

argument.  Regardless, NCI advances a policy-based argument, and we are not a policy-making body.  *See Progressive Am. Ins. v. Broward Ins. Recovery Ctr., LLC*, 322 So. 3d 103, 106 (Fla. 4th DCA 2021) (Artau, J., concurring specially) ("[J]udges are not policymakers.  Thus, in the absence of legislative authority, we should not apply such a doctrine to rewrite this or any other contractual provision.").  If NCI believes that this oft-litigated appraisal provision contravenes public policy, it may address this concern with the Florida Legislature.

> 4.  The Appraisal Provision Does Not Violate Fundamental Rights.

NCI's next policy-based argument also fails.  The appraisal provision does not violate its fundamental rights of access to the court system, jury trial, and due process.  In addition to again requesting that we impermissibly fill a policy-based role, NCI's contention suffers from three further deficiencies.  First, the insured relinquished her rights to the court system when she agreed to the policy with Progressive.  *See Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 398 (Fla. 2005) (holding that right of access to courts and to jury trial may be contractually relinquished, subject to traditional defenses of contract enforcement); *Terminix Int'l Co. v. Ponzio*, 693 So. 2d 104, 109 (Fla. 5th DCA 1997) (rejecting access to courts argument in arbitration context).  As assignee, NCI was certainly aware of the policy's

12

nature—and the litigation rights it was forfeiting—when it stepped into the insured's shoes. Second, appraisal provisions, which arguably affect the rights NCI complains of relinquishing, "are valid and binding upon the parties if they are appropriately invoked." *See New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*, 156 So. 695, 696 (Fla. 1934); *Mendota,* 346 So. 3d at 100. Third, as we have already discussed, the appraisal process does not necessarily eliminate a party's access to the court system and the attendant due process rights that go with it. *See Licea*, 685 So. 2d at 1288; *Glassmetics*, 343 So. 3d at 625 ("[T]he insured did not completely waive the right to a jury trial or the right of access to courts. The waiver applies only to the amount of loss.").

> 5. *The Prohibitive Cost Doctrine Does Not Apply to the Appraisal Process.*

We lastly reject NCI's invitation to extend the judicially created Prohibitive Cost Doctrine. This doctrine, originated by the United States Supreme Court, states that an arbitration clause can be unenforceable if arbitration costs are so substantial as to preclude a litigant from vindicating their federal statutory rights. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000). No Florida court has ever applied this doctrine to the appraisal process, and we will not be the first. *See, e.g., Broward Ins. Recovery Ctr.*, 322 So. 3d at 105 (declining to extend prohibitive

13

cost doctrine to contractually mandated appraisal process). We again decline NCI's invitation to make a policy-based determination better suited to the legislative process.

**B.    An Appraisable Issue Exists.**

An appraisable issue exists because the parties' only dispute is the amount of loss. NCI argues that the trial court erred in ordering the parties to appraisal when there was "never a disagreement that triggered the appraisal process." It suggests the appraisal provision requires both parties to disagree over the amount of loss before appraisal can occur. Therefore, NCI reasons that the parties should have exchanged information before they could disagree on the amount owed. This argument fails because of the policy's plain language, the nature of appraisal, and the reality of the parties' dispute.

The appraisal provision allows either party to initiate appraisal proceedings if there is a disagreement on the loss amount ("If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss."). Progressive admitted coverage, and there are no issues related to the satisfaction of NCI's post-loss conditions or Progressive's opportunity to investigate the claim. *Johnson*, 828 So. 2d at 1025 ("[W]hen the insurer admits that there is a covered loss, but there is

14

disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid." (quoting *Gonzalez v. State Farm Fire & Cas. Co.*, 805 So. 2d 814, 816 (Fla. 3d DCA 2000))); *People's Tr. Ins. v. Fernandez*, 317 So. 3d 207, 210 (Fla. 3d DCA 2021) (demand for appraisal ripe when post-loss conditions have been met, insurer had reasonable opportunity to investigate claim, and there is only disagreement over amount of loss). NCI's argument that there is not yet a "disagreement" sufficient to trigger appraisal rings especially hollow. NCI replaced the insured's windshield, then invoiced Progressive for its work. Progressive acknowledged coverage and paid less than NCI demanded. NCI then sued Progressive, alleging it had failed to pay "all the benefits due." The appraisal process is designed to determine the amount of the loss and suing for more money is sufficient to show there is a disagreement over the amount owed.

### C.    Progressive Did Not Waive Its Appraisal Rights.

Finally, Progressive did not waive its right to appraisal by raising NCI's lack of standing in its motion to dismiss contemporaneously with its demand for appraisal. Waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Blanton v. State*, 978 So. 2d 149, 156 (Fla. 2008) (quoting *Barber v. Page*, 390 U.S. 719, 725 (1968)). In the appraisal context, waiver occurs when "the party seeking appraisal actively participates in a

lawsuit or engages in conduct inconsistent with the right to appraisal." *See Branco*, 148 So. 3d at 493. A party may invoke appraisal rights after litigation has commenced. *See Castilla*, 18 So. 3d at 705. A party cannot seek appraisal until the insurer admits coverage or the trial court determines coverage exists*. See Fla. Ins. Guar. Ass'n v. Martucci*, 152 So. 3d 759, 761 (Fla. 5th DCA 2014). Therefore, a party cannot act inconsistently with the right to seek appraisal until then. *Id.*

To determine whether a waiver of the appraisal process occurred, we evaluate: 1) the length of time that passed between Progressive's admission of coverage and claim for appraisal; and 2) the actions Progressive took during this time to determine whether it engaged in significant legal activity inconsistent with appraisal. *See Fla. Ins. Guar. v. Monaghan*, 167 So. 3d 511, 512 (Fla. 5th DCA 2015). Here, Progressive acknowledged coverage before NCI filed suit when it paid part of NCI's invoice. Indeed, NCI's reaction to Progressive's acknowledgement of coverage and partial payment was to sue. Progressive did not answer the complaint but instead sought to dismiss or abate the case so that the parties could participate in appraisal. It took no other litigious actions other than to contemporaneously raise another legal defense. Under these circumstances, we do not find Progressive waived its appraisal rights.

16

## IV. Conclusion

The trial court did not err when it rejected NCI's varied arguments relating to the appraisal provision's validity, the existence of an appraisable issue, and the absence of waiver. Dismissal without prejudice was a proper remedy. We therefore affirm the trial court's decision.

AFFIRMED.

SASSO and NARDELLA, JJ., concur.