NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


BETHANY TRACE OWNERS'              )
ASSOCIATION, INC., a Florida nonprofit )
corporation,                       )
                                   )
          Appellant,               )
                                   )
v.                                 )          Case No. 2D13-2792
                                   )
WHISPERING LAKES I, LLC, a Florida )
limited liability company; and     )
WATERMEN-PINNACLE, INC., a         )
Florida corporation, f/k/a Bethany Trace )
Estates, Inc.,                     )
                                   )
          Appellees.               )
_____)

Opinion filed December 3, 2014.

Appeal from the Circuit Court for Lee
County; Keith R. Kyle, Judge.

Matthew S. Toll and Thomas S. Heidkamp of
Toll Law, Cape Coral, for Appellant.

Steven H. Mezer of Bush Ross, P.A.,
Tampa, for Appellee Whispering Lakes I,
LLC.

Scott A. Beatty of Henderson, Franklin,
Starnes & Holt, P.A., Bonita Springs, for
Appellee Watermen-Pinnacle, Inc.

VILLANTI, Judge.

Bethany Trace Owners' Association, Inc. (the Association), appeals the final summary judgment entered in favor of Whispering Lakes I, LLC, and Watermen-Pinnacle, Inc., in this case arising out of the ownership of certain lands associated with the Bethany Trace subdivision. Because the trial court entered summary judgment based on an interpretation of the relevant documents that renders portions of them meaningless and because a plausible alternate interpretation gives meaning to all of the provisions, we reverse the final summary judgment and remand for further proceedings.

In the early 1990s, Lehigh Corporation began developing a tract of land in Lee County for a subdivision that was to be called Bethany Trace. As part of the original development of the subdivision, Lehigh Corporation prepared a Declaration of Covenants, Conditions, Restrictions & Easements (the Declaration). The Declaration contained the following definition of the "Common Areas" related to the subdivision:

> 1.6. "Common Areas" mean those tracts, easements or areas of land shown on any recorded subdivision plat of the Property which are intended to be devoted to the general common use and enjoyment of the Owners in the Property, which shall include without limitation, any areas denoted thereon as a common area, including any fences surrounding or within the Property and the entranceway thereof, and water management, conservation tracts and retention tracts, including, without limitation, Bethany Lake, the Lake Maintenance Area, the Park Areas, and the Conservation Area and Conservation Buffer Area. The Common Areas shall also include all improvements now or hereafter constructed on or in the foregoing areas including, without limitation, irrigation systems, planted landscaping, pedestrian or other easement areas within the foregoing areas, signage, structures, lakes and landscaping thereon. Additional Common Areas may be designated by the Developer pursuant to Section 10.12 hereof.

Attached to the Declaration were metes and bounds descriptions of Bethany Lake (Exhibit B), the Lake Maintenance Area (Exhibit C), the Park Areas (Exhibit D), and the Conservation Area and the Conservation Buffer Area (Exhibit E). The Declaration and its exhibits were recorded in the public records of Lee County on September 23, 1994.

On September 13, 2001, Lehigh Corporation assigned its rights and obligations under the Declaration to Watermen.[1] In that assignment, Watermen agreed to "convey to the Association, for no further consideration and free and clear of any liens or encumbrances, those Common Areas referred to [as] 'Bethany Lake', the 'Lake Maintenance Area', the 'Park Area', and the 'Conservation Area and Conservation Buffer Area', as those areas are described in the Declaration." Rather than doing so, Watermen sold those lands to Whispering Lakes, which bulldozed certain improvements on them, apparently in anticipation of building additional residences in the area.

Upon learning of the sale of these lands to Whispering Lakes, the Association sued Watermen for breach of contract and sued Whispering Lakes for breach of covenant and trespass. Watermen and Whispering Lakes subsequently moved for summary judgment, arguing that the language of the Declaration clearly showed that the Association had no legally cognizable interest in any of the identified lands as a matter of law and that therefore Watermen and Whispering Lakes were entitled to judgment in their favor.

---

[1]Prior to the assignment, Lehigh Corporation changed its name to Florida Landmark Communities, Inc. And the assignment was actually made to Watermen's predecessor-in-interest, Bethany Trace Estates, Inc. However, because there is no dispute concerning the corporate identity of any of the parties, we simply refer to them as Lehigh and Watermen for ease of reference.

In making this argument, Watermen and Whispering Lakes pointed to the definition of "Common Areas" in section 1.6 of the Declaration. They contended that the first sentence of that definition, which refers to lands identified as common areas on a recorded plat, applies to the entire definition and means that only those areas identified as common areas on a recorded plat are "Common Areas," regardless of any other language in the Declaration. They contended that since no plat of the Bethany Trace subdivision was ever recorded, no "Common Areas" ever came into existence and therefore Watermen never had any obligations toward the Association as to any "Common Areas." They also contended that the identification of Bethany Lake, the Lake Maintenance Area, the Park Areas, and the Conservation Area and Conservation Buffer Area in the definition of "Common Areas" was nothing more than an illustration of what some "Common Areas" might be if and when the developer actually recorded a plat.

The Association, on the other hand, argued that the definition of "Common Areas" in section 1.6 contemplates four different types of common areas: (1) those identified on a recorded plat if one is subsequently recorded; (2) water management and conservation tracts, including Bethany Lake, the Lake Maintenance Area, the Park Areas, and the Conservation Area and Conservation Buffer Area; (3) improvements constructed on any of the foregoing areas; and (4) additional areas designated by the developer at some later time. Thus, the Association argued that the lack of a recorded plat did not affect its ownership interest in Bethany Lake, the Lake Maintenance Area, the Park Areas, and the Conservation Area and Conservation Buffer Area because

- 4 -

those lands were specifically identified both by name and metes and bounds description in the recorded Declaration.

The trial court agreed with the interpretation of section 1.6 urged by Watermen and Whispering Lakes. Thus, it found that the Association had no ownership interest of any kind in Bethany Lake, the Lake Maintenance Area, the Park Areas, and the Conservation Area and Conservation Buffer Area because neither the original developer nor any subsequent assignee had ever recorded a plat for the subdivision. And because the Association had no ownership interest in these lands, neither Watermen nor Whispering Lakes breached any contract or covenant to convey those rights or could commit a trespass as a matter of law. On the basis of these findings, the trial court entered final summary judgment in favor of Watermen and Whispering Lakes, and the Association now seeks review.

We review the trial court's interpretation of a contract de novo. See Jackson v. Shakespeare Found., Inc., 108 So. 3d 587, 593 (Fla. 2013); Vollmer v. Key Fin. Corp., 810 So. 2d 966, 968 (Fla. 2d DCA 2002). Because the interpretation of a contract is a question of law, this court may reach a construction or interpretation of the contract contrary to that of the trial court. See, e.g., Gemini Ventures of Tampa, Inc. v. Hamilton Eng'g & Surveying, Inc., 784 So. 2d 1179, 1180 (Fla. 2d DCA 2001); Whitley v. Royal Trails Prop. Owners' Ass'n, 910 So. 2d 381, 385 (Fla. 5th DCA 2005). When interpreting contractual provisions, courts "will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so." Moore v. State Farm Mut. Auto. Ins. Co., 916 So. 2d 871, 877 (Fla. 2d DCA 2005); see also Publix Super Markets, Inc. v. Wilder Corp. of Del., 876 So. 2d 652, 654

(Fla. 2d DCA 2004). Instead, courts must strive to interpret a contract in such a way as to give meaning to all provisions while doing violence to none.

In this case, the interpretation of section 1.6 as requiring a recorded plat to create any and all "Common Areas" unjustifiably ignores other sections of the Declaration that clearly give the Association ownership rights and obligations in Bethany Lake, the Lake Maintenance Area, the Park Area, and the Conservation Area and Conservation Buffer Area. For example, article II of the Declaration, entitled "Land Plan," contains the following relevant provisions:

> 2.2. The Park Areas. The Park Areas shall be owned by the Association and maintained in an attractive landscaped manner, all consistent with and in accordance with all laws, ordinances and regulations.
> . . . .
> 2.4. The Conservation Area and the Conservation Buffer Area.
> a. The Conservation Area and the Conservation Buffer Area shall be owned by and shall be the perpetual responsibility of the Bethany Trace Owners' Association, Inc. and may in no way be altered from their natural state. . . .
> b. The Association shall be responsible for an annual basic wetland monitoring plan for the period which ends on September 30, 1997, which will include panoramic photographs, staff gauge readings and vegetation discussion. This information will be submitted to South Florida Water Management District in accordance with the permit issued for Bethany Trace.
> 2.5. Bethany Lake. Bethany Lake shall be owned by the Association and maintained in an attractive manner, all consistent with and in accordance with all laws, ordinances and regulations.
> 2.6. The Lake Maintenance Area. The Lake Maintenance Area shall be owned by the Association and maintained in an attractive manner, all consistent with and in accordance with all laws, ordinances and regulations.
> . . . .
> 2.15. Title to Common Areas. The Developer shall convey legal title to the Common Areas to the Association

- 6 -

free and clear of any encumbrances, and such conveyance shall be subject to the terms of this Declaration and any Supplemental Declaration, including any easement and licenses set out therein and easements for such utility services as the Developer deems appropriate, but may not be subject to the terms of a mortgage.

(Emphasis added.)  Article VI of the Declaration requires the Association to maintain Bethany Lake and the Lake Maintenance Area.  Article IX of the Declaration identifies the Association's expenses as those necessary to "own and maintain the Common Areas, including without limitation, the Park Areas, Bethany Lake and the Lake Maintenance Area, [and] to preserve and monitor the Conservation Area and the Conservation Buffer Area."  That same article requires the Association to insure and maintain—and collect assessments to pay for the maintenance of—these identified lands.  Finally, article VII of the Declaration makes the Association responsible for the removal of invasive exotic species in the Conservation Area and Conservation Buffer Area.

It is clear from the language of the entire Declaration that the Association was given ownership rights and obligations in Bethany Lake, the Lake Maintenance Area, the Park Area, and the Conservation Area and Conservation Buffer Area that are separate and apart from some otherwise generic "common areas" that might be identified on some future recorded plat.  None of the Association's obligations as to these specifically identified lands are contingent on the developer subsequently recording a separate plat that identifies them as "Common Areas."  Instead, it is clear from a reading of the entire Declaration that the ownership rights and obligations as to these identified lands spring from the Declaration itself.  And this interpretation is further reinforced by section 10.12 of the Declaration, which permits the developer to add

- 7 -

common areas to the subdivision by recording an amendment to the Declaration—not by recording a new subdivision plat.

Additional support for this interpretation of section 1.6 comes from the language of the assignment from Lehigh Corporation to Watermen. That assignment required Watermen to convey to the Association "those Common Areas referred to as 'Bethany Lake', the 'Lake Maintenance Area', the 'Park Area', and the 'Conservation Area and Conservation Buffer Area.'" This phrasing indicates that these identified lands are separate and apart from any general "common areas" that might otherwise exist. And an interpretation of section 1.6 as requiring a recorded plat before any interest arose in these identified lands would render Watermen's obligation to convey them to the Association illusory since it was undisputed that no plat of Bethany Trace had been recorded in the years between 1994, when the Declaration was recorded, and 2001, when the assignment was signed.

Here, the interpretation adopted by the trial court results in portions of the Declaration being meaningless. It ignores those portions of the Declaration that state that the Association shall own and maintain Bethany Lake, the Lake Maintenance Area, the Park Area, and the Conservation Area and Conservation Buffer Area, and it also renders the obligation of the developer to convey legal title to these lands to the Association meaningless. The Association's interpretation, on the other hand, is a reasonable interpretation that gives meaning to all of the provisions of the Declaration and the subsequent assignment. Therefore, we reverse the final summary judgment in favor of Watermen and Whispering Lakes and remand for further proceedings.

Reversed and remanded for further proceedings.


DAVIS, C.J., and KELLY, J., Concur.