NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DANIEL T. HESTER, an individual,    )
    )
    Appellant,    )
    )
v.    )    Case No. 2D15-1167
    )
FLORIDA CAPITAL GROUP, INC., a    )
Florida corporation; CHARLES E.    )
HUGHES, an individual; and J. MALCOLM    )
JONES, JR., an individual,    )
    )
    Appellees.    )
    )

Opinion filed March 30, 2016.

Appeal from the Circuit Court for Pinellas
County; Walter L. Schafer, Jr., Judge.

John E. Johnson and Christopher L.
DeCort of Johnson & Cassidy, P.A.,
Tampa, for Appellant.

Christopher L. Griffin of Foley & Lardner
LLP, Tampa; and John S. Lord, Jr. and
Christina M. Kennedy of Foley & Lardner
LLP, Orlando, for Appellees.


MORRIS, Judge.

        Daniel T. Hester appeals an order dismissing with prejudice his complaint

against Florida Capital Group, Inc.; Charles E. Hughes; and J. Malcom Jones, Jr.

(collectively referred to as the appellees), for breach of Hester's employment agreement, fraud, negligent misrepresentation, and declaratory and injunctive relief. In a pretrial effort to resolve the disputes, the parties entered into a settlement agreement, but the parties later disputed the enforceability of certain terms of that agreement. The trial court granted the appellees' motion to enforce the settlement agreement and entered an order dismissing Hester's complaint. On appeal, Hester challenges the trial court's interpretation of the terms of the settlement agreement. We reverse for the reasons explained below.

**I. Facts and procedural background**

Florida Capital Group, Inc. (the Bank), operates a national banking association with an office in Pinellas County. Hughes and Jones were officers of the Bank, and Hester was employed by the Bank as an executive. After Hester's employment was terminated, he initiated the underlying litigation in 2010. In 2011, the parties participated in mediation and reached an initial settlement that was contingent upon regulatory approval from governmental agencies. The approval was not obtained, and the parties recommenced settlement discussions in 2012. On July 18, 2012, the parties executed the settlement agreement at issue in this appeal.

The agreement provides that Hester will dismiss his complaint against the appellees in exchange for the payment of certain sums by the appellees. The agreement also provides that the sums are subject to approval by the necessary regulatory agencies. More specifically, the agreement provides as follows:

> 2. The parties shall submit to the necessary federal regulatory entities, including as necessary the Federal Reserve, the Federal Deposit Insurance Corporation [(FDIC)], and/or the Office of Comptroller of the Currency,

within 10 days of the execution of this Agreement (the "Submission Date"), for approval of the payment of the sums set forth in Section 3 within six months from the Submission Date. The parties agree to stay all active litigation, including but not limited to all discovery, until after the expiration of this six[-]month period.

3. In consideration for Hester's promises and covenants contained in this Agreement, Florida Capital, Hughes and Jones agree to pay Hester the total settlement amount of $500,000.00 (the "Settlement Amount"), broken down as follows: Florida Capital will pay to Hester the gross amount of $160,000.00 for claimed severance pay; Florida Capital will pay to Hester the gross amount of $40,000.00 for claimed attorneys' fees and costs; and Florida Capital's, Hughes' and Jones' insurance carrier, The Travelers Companies, Inc., will pay to Hester the gross amount of $300,000.00 for claimed compensatory damages for the negligence claims; provided however the parties agree that any and all payments agreed to in this Agreement are subject to advance approval by the necessary regulatory entities. Said amounts will be delivered within 15 days after Hester, Florida Capital, Hughes and Jones receive the necessary regulatory approvals for any respective payment. . . . After regulatory approval is received for the Settlement Amount, the payments will be made as follows: a check in the amount of $160,000.00, payable to Hester, representing payment for claimed severance pay . . . ; a check in the amount of $300,000.00, payable to Hester, representing payment for claimed compensatory damages for the negligence claims . . . ; and a check in the amount of $40,000.00, payable to Hester's lawyer's firm, representing payment for attorney's fees and costs alleged in the Lawsuit . . . . In the event that regulatory approval is received for a total amount equal to or greater than $350,000.00, but not for the Settlement Amount--or for an amount less than $350,000.00 and Hester provides Florida Capital, Hughes and Jones with the written confirmation of acceptance of said amount as detailed in Section 6--the payments will be made proportionally in accordance with the breakdown provided in this Section.

4. If regulatory approval is received for the Settlement Amount, Hester will dismiss with prejudice the Lawsuit no later than five days after receipt of payment of those sums, by filing a notice of dismissal with prejudice with the court.

5. If regulatory approval is received for a total amount of $350,000.00 or greater, Hester will dismiss with prejudice the Lawsuit no later than five days after receipt of payment of those sums, by filing a notice of dismissal with prejudice with the court.

6. If regulatory approval is received for a total amount less than $350,000.00, Hester will have the sole option to accept or reject payment of the approved amount that is less than $350,000.00, by sending written confirmation of said acceptance or rejection to Florida Capital, Hughes and Jones within 15 days of receiving regulatory approval. If Hester accepts the approved amount that is less than $350,000.00, Hester will dismiss with prejudice the Lawsuit no later than five days after receipt of payment of those sums, by filing a notice of dismissal with prejudice with the court. If Hester does not accept the approved amount that is less than $350,000.00, the active litigation shall continue under the pre-determined schedule set forth in Section 7.

7. In the event that the necessary federal regulatory entities fail to respond to the submission for approval as set forth in Section 2 within six months of the Submission Date, upon expiration of the six[-]month period referenced in Section 2 the active litigation shall continue under the following pre-determined schedule, which shall be agreed to by the parties and submitted to the court with jurisdiction over the Lawsuit as a condition of this Agreement . . . .

(Emphasis added.) Section 7 of the agreement further provides that depositions and discovery would be concluded in March 2013, that all dispositive motions would be heard in April 2013, and that a jury trial in Pinellas County would commence no later than June 1, 2013. Section 8 of the agreement provides that Hester will accept "regular early termination benefits available to him pursuant to the [Supplemental Executive Retirement Plan (SERP)]" and that he will not seek any enhanced early termination benefits under the SERP. Further, the Bank is required to begin paying Hester the SERP payments within forty-five days, including a lump sum payment for the SERP payments that had accrued since his termination.

- 4 -

Pursuant to Section 2 of the agreement, in July 2012, Hester and the appellees submitted to the regulatory agencies an application for approval of the agreed-upon payments in Section 3, but the regulators failed to respond to the application within six months. On February 8, 2013, Hester filed an unopposed motion to set the matter for trial, and on November 1, 2013, the parties filed a joint stipulation to set the cause for trial in February 2014.

Approximately a year and a half after the parties submitted the application to the regulatory agencies, the Bank sent Hester a letter advising him that the Bank had "received confirmation from the FDIC that Mr. Hester may be paid $300,000 as part of the settlement." The FDIC letter, dated December 18, 2013, stated that the $300,000 payment by the Bank's insurer did not require regulatory approval. The FDIC letter further stated, however, that the $160,000 and $40,000 proposed payments constituted "golden parachute payments" that required regulatory approval. The FDIC determined that "[a]ny amount in excess of twelve months' salary, including the $40,000 for attorney's fees, would constitute an impermissible golden parachute payment." As to that portion of the settlement, the FDIC indicated that it was prepared to deny the application but that it would consider a revised application if submitted within thirty days. The Bank stated in its letter to Hester that it was submitting a revised application to the FDIC requesting that it be allowed to pay him a golden parachute payment of $160,000.

On December 23, 2013, Hester sent the Bank a letter rejecting the offer of $300,000. Hester noted that the settlement agreement had "expired by its own terms and is of no further force or effect." Hester objected to any "stay relief that is premised upon the [B]ank's unilateral submission to the FDIC" of a new application. Hester

- 5 -

counteroffered to settle his claims for a total of $760,000. In April 2014, Hester made another offer to settle his claims for a total of $720,000. In May 2014 and again in August 2014, the appellees offered to have their insurance company pay Hester $350,000 and then submit a new application to their regulators for an additional payment of $160,000, for a total settlement of $510,000. Upon receiving no response from Hester, the appellees filed a motion to enforce the settlement agreement, arguing that the appellees had offered to pay $350,000 and an additional $160,000 if regulatory approval was obtained.

Following two hearings on the appellees' motion to enforce, the trial court entered an order approving and enforcing the settlement agreement in September 2014. The trial court found that the agreement is clear and unambiguous and that the six-month period in the agreement referred to a period of non-litigation rather than an expiration date for the agreement. The court further found that the appellees' total offer to Hester of $510,000 met the terms of the settlement agreement. The trial court directed the Bank to pay $350,000 to Hester and to submit the necessary paperwork for regulatory approval to pay him an additional $160,000, with payment to be made within ten days of receipt of such approval. The court also found that under the agreement, the appellees are prevailing parties for purposes of attorneys' fees and costs. Hester attempted to appeal the September 2014 order, but this court dismissed the appeal as being from a nonfinal, nonappealable order. Hester entered into a stipulation with the appellees whereby the trial court entered a final order dismissing the case with prejudice, so that Hester could appeal the trial court's ruling enforcing the payment terms of the settlement agreement.

## II. Analysis

On appeal, Hester argues that the trial court erred in enforcing certain payment provisions of the agreement that he claims had expired. He contends that the terms of the agreement clearly and unambiguously provide that the payment provisions in Sections 3 through 6 were contingent upon regulatory approval being received within six months. Hester claims that because regulatory approval was not received within six months, he was not required to accept those payments. He argues that other provisions of the agreement did not expire after any specific period of time, e.g., the provisions regarding the SERP payments in Section 8, and that those provisions became binding at execution of the agreement and are enforceable. The appellees, on the other hand, argue that the trial court correctly ruled that the agreement does not contain an expiration date for regulatory approval; the agreement only stayed the active litigation during a six-month period. The appellees contend that the agreement did not require the regulatory approval to be obtained within six months in order for the payment provisions to be valid.[1]

The interpretation of settlement agreements is governed by contract law. Gira v. Wolfe, 115 So. 3d 414, 417 (Fla. 2d DCA 2013). We review de novo the trial court's interpretation of the agreement in this case as a matter of law, and in doing so, we "may reach a construction or interpretation of the contract contrary to that of the trial court." Bethany Trace Owners' Ass'n v. Whispering Lakes I, LLC, 155 So. 3d 1188, 1191 (Fla. 2d DCA 2014). "The cardinal rule of contractual construction is that when the language of a contract is clear and unambiguous, the contract must be interpreted and

---

[1]We note that neither Hester nor the appellees argue that the terms of the agreement are ambiguous.

enforced in accordance with its plain meaning." CitiMortgage, Inc. v. Turner, 172 So. 3d 502, 504 (Fla. 1st DCA 2015) (quoting Columbia Bank v. Columbia Developers, LLC, 127 So. 3d 670, 673 (Fla. 1st DCA 2013)). "When interpreting contractual provisions, courts 'will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so.' " Bethany Trace Owners' Ass'n, 155 So. 3d at 1191 (quoting Moore v. State Farm Mut. Auto. Ins. Co., 916 So. 2d 871, 877 (Fla. 2d DCA 2005)).

We agree with Hester that the language of the agreement is clear and unambiguous in that it requires regulatory approval of the payment terms in Sections 3 through 6 within six months.[2] Specifically, Section 2 states that "[t]he parties shall submit to the necessary federal regulatory entities . . . for approval of the payment of sums set forth in Section 3 within six months from the Submission Date." (Emphasis added.) This language clearly expresses an intent that the regulatory approval be received within six months. Section 2 goes on to provide that all active litigation would be stayed "until after the expiration of this six[-]month period." Had the underlined language above not been included in the agreement, the trial court's interpretation (and the appellees' interpretation) of the agreement would be reasonable. If the underlined language requiring approval within six months had been omitted, the six-month time period would have simply been a stay of litigation and nothing more. But Section 2 clearly requires regulatory approval of the agreed-upon payments within six months. To

---

[2]The breakdown of the agreed-upon settlement amount is set forth in Section 3, and Sections 4 through 6 in turn address if regulatory approval is received in the settlement amount, in an amount of $350,000 or greater, or in an amount less than $350,000.

read Section 2 otherwise—as simply being a stay of litigation—would render meaningless the language referring to approval within six months.

The language of Section 7 of the agreement further demonstrates that the parties intended for the regulatory approval to be received within six months in order for the payment terms of Sections 3 through 6 to take effect. Section 7 provides for a litigation schedule "[i]n the event that the necessary federal regulatory entities fail to respond to the submission for approval as set forth in [s]ection 2 <u>within six months of the Submission Date</u>" and "upon expiration of the six[-]month period referenced in Section 2." (Emphasis added.) This language reflects the parties' intent that regulatory approval be received within six months in order to trigger the payment provisions in Sections 3 through 6. This language also reflects the parties' intent that if such timely approval was not received, the litigation would continue on Hester's claims mentioned in Section 3 in accordance with the schedule provided in Section 7. If the parties had contemplated that regulatory approval could be received after the six-month period had expired and that litigation would again be stalled in the future, the litigation schedule outlined in section 7 would be meaningless. We note that there is no language in the agreement regarding what would happen to the litigation if regulatory approval were to be received after six months, further supporting the conclusion that the parties did not intend for approval to be received after six months for purposes of the payment provisions in Sections 3 through 6.

The appellees argue that the agreement does not contain an expiration date, but Hester does not argue that the entire agreement contains an expiration date. Rather, he argues, and we agree, that the payment provisions in Sections 3 through 6

took effect only if the regulatory approval was received within six months of the date the application was submitted.

Because the only reasonable interpretation of the agreement requires regulatory approval of the payment terms in Sections 3 through 6 within six months and because regulatory approval was not received within six months, the trial court erred in concluding that the payment terms in Sections 3 through 6 are enforceable against Hester.[3]  In light of our determination on this issue, we need not address Hester's remaining arguments on appeal.  We reverse the final order dismissing Hester's complaint with prejudice and remand for further proceedings consistent with this opinion.

Reversed and remanded.


KELLY and CRENSHAW, JJ., Concur.

---

[3]Even though the trial court concluded that the agreement is unambiguous, it noted an expiration provision that had been included in an earlier draft of the agreement but was stricken from the final agreement.  Only if the terms are latently ambiguous should a trial court consider extrinsic evidence in determining the intent of the parties.  See Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1002-03 (Fla. 2d DCA 1995) (discussing the difference between a patent and latent ambiguity and holding that a trial court is authorized to consider parol evidence when a latent ambiguity exists, i.e., when a contract is clear and unambiguous on its face but fails to specify the rights and duties of the parties in certain situations).  Because the agreement in this case is clear and unambiguous regarding the factual situation presented in this case, resort to extrinsic evidence is not necessary.