# Third District Court of Appeal

## State of Florida

Opinion filed August 8, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-529
Lower Tribunal No. 16-11280
_____

## Masoud Jahangiri and Leyli Jahangiri, individually and as members of La Bottega on the Bay, LLC,
Appellants,

vs.

## 1830 North Bayshore, LLC,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Fischer Redavid PLLC and Jordan Redavid, for appellants.

Rennert Vogel Mandler & Rodriguez, P.A., Thomas S. Ward, and Jason R. Block, for appellee.

Before ROTHENBERG, C.J., and FERNANDEZ and LUCK, JJ.

LUCK, J.

"Man is an animal that makes bargains: no other animal does this – no dog exchanges bones with another." Adam Smith & Edwin Cannan, The Wealth of

_Nations_, New York, N.Y: Bantam Classic (2003). If the individuals making bargains require the assistance of the courts in enforcing them, however, they must present the court with a definite and certain agreement. The Jahangiris – renters of a market and deli in Miami – have failed to do this and for that reason we affirm the trial court's summary judgment in favor of the landlord, 1830 North Bayshore, LLC.

*Factual Background and Procedural History*

La Bottega on the Bay, LLC, through its principals, Massoud Jahangiri and Leyli Jahangiri, entered into a written lease for commercial property located at 1800 N. Bayshore Drive, Suite CP-2, Miami, Florida. The space was to be used as a market and deli. The lease was for five years ending on May 31, 2016. The rental rate for the initial term was $5,500 for the first two years, and $6,000 for the remaining three years. Section twenty-seven of the lease read:

> **RENEWAL OPTIONS:** Upon six months notice and provided [lessee] is not in default of any provision of this Lease, LESSOR agrees that [lessee] may renew this Lease for two five-year renewal options, each renewal at the then prevailing market rate for comparable commercial office properties.

Throughout the initial five-year term, the lessee timely paid its rent and was otherwise in compliance with the terms of the lease. Beginning in November of 2015, via letters and electronic mail, the lessee notified the landlord[1] of its intent to

---

[1] Ownership of the property was ultimately transferred during the rental period to appellee, 1830 North Bayshore, LLC.

2

exercise the first of the two-renewal terms. The landlord refused to renew the lease. The lessee filed this lawsuit seeking a declaration it properly invoked the renewal clause in the lease, and an injunction prohibiting the landlord from evicting the lessee from the property.

Following amendments and cross-pleadings, the landlord moved for summary judgment contending the renewal provision was unenforceable because it failed to state an essential term, i.e., the amount of rent to be paid upon renewal. The lessee opposed the motion arguing that the renewal provision was enforceable because it provided a method for arriving at the renewal rental amount. The trial court found the renewal provision to be "too indefinite" and "legally unenforceable." It ordered appellants to vacate the premises, but stayed the order pending appeal on the condition that appellants pay double the rent in the interim.

*Standard of Review*

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. As such, our standard of review is de novo. Generally, interpretation of a document is a question of law rather than of fact." Bucacci v. Boutin, 933 So. 2d 580, 582-83 (Fla. 3d DCA 2006) (citations omitted).

*Discussion*

3

"[T]he amount of rental is an essential element of a lease, if not the basis for a lease, and an agreement to make a lease, or to renew or extend a lease, that fails to specify either the amount of the rental or a definite procedure to be followed to establish the amount of the rental, is too indefinite to be legally binding and enforceable." Edgewater Enters., Inc. v. Holler, 426 So. 2d 980, 983 (Fla. 5th DCA 1982) (footnotes omitted); see also LaFountain v. Estate of Kelly, 732 So. 2d 503, 505 (Fla. 1st DCA 1999) (same). The issue here is whether "renewal at the then prevailing market rate for comparable commercial office properties," as provided in this lease, is a definite procedure to be followed to establish the amount of rent. If it is, as the lessee contends, then it is an enforceable renewal provision (and we must reverse the trial court's judgment). If it is not a definite procedure, as the landlord contends, then it is too indefinite to be legally binding (and we must affirm).

Three Florida cases guide our analysis. Edgewater, first, set out the rule for renewal provisions. There, the lease could be renewed under the following terms:

RENEWAL OF LEASE

16. Tenant shall have the option to take a renewal lease of the demised premises for the further term of three (3) years from and after the expiration of the term herein granted at a monthly rental to be arbitrated, negotiated and determined among the parties to this lease at said time.

4

Edgewater, 426 So. 2d at 981. At the end of the initial term of the lease, the lessee notified the landlord that it was exercising the option to renew. Id. The negotiations, however, "as to the rental to be paid during the rental period were unsuccessful." Id. The lessee sought a declaration "to have the trial court determine a reasonable rental for the renewal period and to specifically enforce the renewal provision." Id. The issue, as here, was "whether [the] renewal provision in a lease, which specifies the length of the term of the renewal but leaves the amount of the monthly rental during the renewal period to be negotiated, [was] sufficiently definite to be legally enforceable." Id.

The Fifth District Court of Appeal set out the split of authority. Id. "Some jurisdictions," the court said, "reason that the renewal option is for the benefit of the lessee for which he gave consideration; that the parties intended the clause to have some meaning; that the lessee should not be deprived of his right to specifically enforce the contract; and therefore, if the parties cannot agree upon a rent figure, that the court has authority to determine a 'reasonable rent' and specifically enforce the contract." Id. at 981-82 (footnote omitted). Other jurisdictions reason "that rent is an essential element to be agreed upon in the future; therefore, when the parties cannot subsequently agree, an essential element is missing and since the parties have not agreed upon a method for solving this

5

impasse, the contract is indefinite as to an essential term and is unenforceable." Id. at 982.[2]

The Fifth District adopted the second view as consistent with Florida law because "when contracting parties do not agree on an essential provision there is no 'meeting of the minds' that is the essence of a contract, and in that situation it is

[2] As support for the rule it ultimately adopted that indefinite renewal clauses are unenforceable, the Edgewater decision followed this quote with a footnote citing to twenty-five out-of-state decisions:

> Jurisdictions that have held such clauses indefinite and unenforceable are: George Y. Worthington & Son Mgmt. Corp. v. Levy, 204 A.2d 334 (D.C.1964); Lutterloh v. Patterson, 211 Ark. 814, 202 S.W.2d 767 (1947); Beasley v. Boren, 210 Ark. 608, 197 S.W.2d 287 (1946); Candler v. Smyth, 168 Ga. 276, 147 S.E. 552 (1929); Streit v. Fay, 230 Ill. 319, 82 N.E. 648 (1907); State v. Jordan, 247 Ind. 361, 215 N.E.2d 32 (1966); Puetz v. Cozmas, 237 Ind. 500, 147 N.E.2d 227 (1958); Beal v. Dill, 173 Kan. 879, 252 P.2d 931 (1953); Walker v. Keith, 382 S.W.2d 198 (Ky.1964); Metcalf Auto Co. v. Norton, 119 Me. 103, 109 A. 384 (1920); Giglio v. Saia, 140 Miss. 769, 106 So. 513 (1926); State ex rel Johnson v. Blair, 351 Mo. 1072, 174 S.W.2d 851 (1943); Rosenberg v. Gas Service Co., 363 S.W.2d 20 (Mo. App. 1962); Sammis v. Huntington, 104 Misc. 7, 171 N.Y.S. 965, aff'd., 186 App.Div. 463, 174 N.Y.S. 610 (1918); Young v. Sweet, 266 N.C. 623, 146 S.E.2d 669 (1966); R.J. Reynolds Co. v. Logan, 216 N.C. 26, 3 S.E.2d 280 (1939); Jamison v. Lindblom, 92 Ohio App. 324, 49 Ohio Ops 379, 110 N.E.2d 9 (1951); Karamanos v. Hamm, 267 Or. 1, 513 P.2d 761 (1973); Slayter v. Pasley, 199 Or. 616, 264 P.2d 444 (1953); Vartabedian v. Peerless Wrench Co., 46 R.I. 472, 129 A. 239 (1925); Schlusselberg v. Rubin, 465 S.W.2d 226 (Tex.Civ.App.1971); Salem Lodge v. Smith, 94 W.Va. 718, 120 S.E. 895 (1924); Batavian Nat'l. Bank v. S & H, Inc., 3 Wis.2d 565, 89 N.W.2d 309 (1958); Leider v. Schmidt, 260 Wis. 273, 50 N.W.2d 233 (1951); Ratcliff v. Aspros, 254 Wis. 126, 35 N.W.2d 217 (1948).

Edgewater, 426 So. 2d at 982 n.5.

6

not the province of the court to make the contract or to supply material terms or provisions omitted by the parties." Id. Because "the amount of rental is an essential element of a lease," the renewal provision must include one of two things: "either [1] the amount of the rental or [2] a definite procedure to be followed to establish the amount of the rental." Id. at 983.

We and our sister court have applied the Edgewater rule in Lubal Development Co. v. Farm Stores, Inc., 458 So. 2d 781 (Fla. 3d DCA 1984) and LaFountain. In Lubal, the lease provided "for negotiation and agreement between the parties at the time of the extension, or, in the event the parties could not agree on a new rental price, that [lessee] would be given the right of first refusal of any bona fide offer received by the landlord." Id. at 782. When the parties couldn't negotiate the rent for the extension, and the landlord "refused to offer the property for rent so that [the lessee] could exercise its right of first refusal as provided for in the lease," the lessee sought declaratory relief. Id. We agreed that the renewal provision was "valid and enforceable" because

> while there was no price term specified in the extension provision itself, there was a method provided by which a rental price could be established in the event the parties could not reach an agreement. The right of first refusal provision would allow the parties to ascertain the fair rental value of the property and thereafter to make a decision based on the offers (if any) received by the landlord. With this requisite in the lease, the extension provision, which otherwise would be void for indefiniteness, becomes valid and enforceable.

Id. (footnote omitted).

The lease in LaFountain, on the other hand, provided that:

> The Lessor grants to the Lessee the option to renew said lease for two additional periods of five (5) years each, provided written notice of the intent to exercise the option is given at lease [sic] ninety (90) days before the expiration of the original term. In the event Lessee exercises its option to renew, the lease payment for the renewal period will be negotiated between the parties.

LaFountain, 732 So. 2d at 504. After the parties couldn't reach agreement on the rent amount, the lessee sued for breach of contract. Relying on Edgewater, the First District Court of Appeal agreed that the "will-be-negotiated" language was too indefinite to be legally binding. Id. at 505. "The renewal option . . . did not specify the rental amount or a method for reaching agreement on the rent, and the option was thus unenforceable once the parties failed to agree to an essential element of the lease." Id.

We find the renewal provision here – "renewal at the then prevailing market rate for comparable commercial office properties" – more like the indefinite procedure in LaFountain than the definite one in Lubal. Where the lease does not provide for the amount of renewal rent, the procedure for determining rent has to be definite enough, without further negotiation or litigation on the methodology used, to fix the rent with certainty. That is the kind of definite procedure we approved in Lubal. There, the procedure – which gave the lessee the right of first refusal on an actual offer – did not require the parties and the court to fill in any blanks on how to calculate the amount of rent. The amount was easily determined

8

and readily calculable once an offer was made on the property. The third-party offer <u>was</u> the new rent. There was no more information that the parties needed to fix the amount.[3]

Here, by contrast, there is still more for the parties to decide before the rent could be fixed with certainty. Who is responsible for obtaining the "comparables"? Must the lessor or the lessee provide the comparables? May the other party object and who will resolve any such objections? There are also issues as to the validity of the comparables. What factors are to be considered in determining that another property is truly comparable? Is it the square footage of the space, its location, its condition, its use, or must other factors also be considered? And what is the "prevailing market rate"? Is it the mean, medium, or mode of the three comparable commercial properties? Is it the highest or lowest price of the comparables? Is it the comparable sales rate or the rental rate that sets the "market"?

All of these issues demonstrate that the method provided by the parties here is not a sufficiently definite procedure for calculating the rent. There are too many

---

[3] Other examples of definite procedures include fixed percentage increases and increases based on the federal Consumer Price Index. <u>See, e.g.</u>, 4A Fla. Jur. Forms Legal & Bus. § 16A:331 ("During each Renewal Period, the Base Rent shall be adjusted by increasing the Base Rent of the last Lease Year of the Lease Term by an amount equal to the percentage increase in the CPI between the first and last month of the Lease Term on the extended Lease Term…. During each Lease Year of the extended Lease Term, the annual Renewal Base Rent shall be increased by *[percentage]*% over the previous year's Renewal Base Rent.").

open questions about the method for determining rent that are subject to future negotiations by the parties or have to be decided by the courts. Where renewal rent can only be determined after future negotiations between the parties, or litigation, the procedure is not definite enough for there to have been a meeting of the minds on that essential term in the lease.[4]

While the Florida courts have not considered a provision similar to this one, we find persuasive the cases relied on by Edgewater, and especially Walker v. Keith, 382 S.W.2d 198 (Ky. 1964). There, like here, the lease renewal option provided:

> rental will be fixed in such amount as shall actually be agreed upon by the lessors and the lessee with the monthly rental fixed on the comparative basis of rental values as of the date of the renewal with rental values at this time reflected by the comparative business conditions of the two periods.

Id. at 199. The Kentucky court found this provision too indefinite.

> The majority of cases, passing upon the question of whether a renewal option providing that the future rent shall be dependent upon or

---

[4] That is not to say the trial courts are incapable of determining the fair value of property where valuation is an issue. We're sure that it could after hearing from competing experts, reviewing valuation models, and looking at real estate data about similar properties in the area. But that is the point. The Edgewater rule says rent is an essential term that should not be filled in by the courts where the parties have not been sufficiently definite in the lease. The renewal provision must be specific enough so that there are no disputes about what information is needed to determine the amount of rent. The determination should flow from the procedure in the lease without having to negotiate or fight about competing methodologies for determining fair market value that are subject to negotiation or court intervention.

proportionate to <u>the valuation of the property</u> at the time of renewal, hold that such provision is not sufficiently certain to constitute an enforceable agreement. The valuation of property and the ascertainment of 'comparative business conditions,' which we have under consideration, involve similar uncertainties.

. . . .

If 'comparative business conditions' afforded sufficient certainty, we might possibly surmount the obstacle of the unenforceable agreement to agree. This term, however is very broad indeed. Did the parties have in mind local conditions, national conditions, or conditions affecting the lessee's particular business?

That a controversy, rather than a mutual agreement, exists on this very question is established in this case. One of the substantial issues on appeal is whether the Chancellor properly admitted in evidence the consumer price index of the United States Labor Department. At the trial the lessor was attempting to prove the change in local conditions and the lessee sought to prove changes in national conditions. Their minds to this day have never met on a criterion to determine the rent. It is pure fiction to say the court, in deciding upon some figure, is enforcing something the parties agreed to.

. . . .

The renewal provision before us was fatally defective in failing to specify either an agreed rental or an agreed method by which it could be fixed with certainty. Because of the lack of agreement, the lessee's option right was illusory.

<u>Id.</u> at 203-04 (citations omitted); <u>see also</u> <u>1651 North Collins Corp. v. Laboratory Corporation of America</u>, 529 Fed. Appx. 628, 629 (6th Cir. 2013) (finding unenforceable and indefinite provision that renewal "rental for each option period shall be the then market rent for similar space in the Louisville area, but not less than the immediately preceding five-year period").

Here, as in <u>Walker</u>, there are too many open questions about "prevailing market rate[s]" and "comparable" properties for us to conclude that there was a

11

meeting of the minds on rent. (The parties can't even agree on the criteria for calculating market rent.) Like the right of first refusal in <u>Lubal</u>, the method for determining rent has to be sufficiently definite that the amount could be fixed with certainty without resorting to further negotiations or litigation to resolve open questions in the methodology. This one was not, and we have "no right to write a contract for parties where none exists." <u>Belitz v. Riebe</u>, 495 So. 2d 775, 777 (Fla. 5th DCA 1986); <u>see also</u> <u>Fed. Home Loan Mortg. Corp. v. Beekman</u>, 174 So. 3d 472, 476 (Fla. 4th DCA 2015).

## CONCLUSION

We, therefore, agree with the trial court that section twenty-seven was not a valid and enforceable renewal provision. We affirm the trial court's judgment for the landlord.

Affirmed.

12