DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

CERTIFIED MOTORS, LLC, a Florida limited liability company;
and JOSEPH ELNAGGAR,

Appellants,

v.

AVENTINE HILL, LLC, a Florida limited liability company;
and MANUEL DELGADO, JR.,

Appellees.

No. 2D22-2306

_____

September 6, 2023

Appeal from the Circuit Court for Hillsborough County; Cheryl K. Thomas, Judge.

George A. Vaka and Nancy A. Lauten of Vaka Law Group, P.L., Tampa; and Liben M. Amedie of The Liben Law Firm, Tampa, for Appellants.

Stacy D. Blank, Paul A. McDermott, and Daniel L. Buchholz of Holland & Knight LLP, Tampa, for Appellee Aventine Hill, LLC.

No appearance for remaining Appellee.

LaROSE, Judge.

Certified Motors, LLC, appeals a summary judgment entered in favor of Aventine Hill, LLC. The trial court found the parties' commercial lease renewal option unenforceable. We have jurisdiction. *See* Fla. R.

App. P. 9.110(k) ("Review of Partial Final Judgments.").[1]  Having carefully reviewed the record, and with the benefit of oral argument, we reverse.[2]

## Background

Certified entered into a commercial lease to operate a car repair and sales business.  Rent was $5,000 per month.  The lease included a five-year renewal option:

> **TERM**.  The term of this Lease shall begin on January 1, 2017, and last until December 31, 2022.  **Tenant can exercise an option for an additional 5[-]year period if given in writing to the owner 90 days before the term expiration.**

(Second emphasis added.)

Several months later, Aventine purchased the leased premises, thereby becoming Certified's landlord.

The parties' relationship was rough from the start.  Aventine accused Certified of breaching the lease in a variety of ways.  Certified denied the accusations.  Eventually, Aventine sued Certified.

---

[1] The judgment granted declaratory relief on Count V of Aventine's second amended complaint.  This is an appealable partial final judgment because the facts underlying Count V are distinct from those undergirding Aventine's remaining four counts.  *See generally Dahly v. Dep't of Child. & Fam. Servs.*, 876 So. 2d 1245, 1248 (Fla. 2d DCA 2004) ("When an appeal is taken from a summary judgment that does not dispose of all of the parties or causes of action in a lawsuit, this court applies a three-part test to determine our authority under rule 9.110(k) to review the judgment: (1) Could the cause of action disposed of by the partial summary judgment be maintained independently of the other remaining causes of action?  (2) Were one or more parties removed from the action when the partial summary judgment was entered?  (3) Are the counts separately disposed of based on the same or different facts?").

[2] Because of our disposition, we do not reach Certified's estoppel argument.

2

Thereafter, Certified timely informed Aventine that it "ha[d] elected to extend the terms of the Lease for an additional 5-year period." Aventine amended its complaint to seek a declaration that the renewal option was unenforceable. *See generally* § 86.011, Fla. Stat. (2021) (delineating the trial court's jurisdiction to render declaratory judgments).

Aventine moved for summary judgment on the declaratory judgment count. It argued that the renewal option "does not define an amount of agreed rent, does not provide that rent will be at the same amount as rent during the initial term, and does not provide for any agreed mechanism to determine a new rate of rent." Thus, according to Aventine, the renewal option lacked essential terms.

Aventine's argument won the day. In granting summary judgment, the trial court explained:

> The commercial lease agreement fails to define all essential and material terms that would apply during a renewal period. It fails to define the amount of rent to be paid by the tenant, fails to state that rent during the renewal term will be at the same amount as rent during the initial term, and fails to provide how the amount of rent would be determined or agreed upon by the parties during a renewal term.

The trial court was clearly troubled by the below-market rent that the original landlord charged. The trial court explained that "[i]t is in defiance of logic to assume that a landlord would enter into a contract that would not even allow a claim for market rent."[3] The trial court stayed the action pending appeal.

---

[3] Certified allegedly expended over $300,000 to improve the leased property. In exchange, the original landlord offered a favorable monthly rent. We take no position as to the amount charged. Instead, we focus on the enforceability of the renewal option. *Cf. KRG Oldsmar Project Co.*

## Analysis

Florida's summary judgment rule provides that "[t]he [trial] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a).

We review the trial court's summary judgment de novo. *See Lee Cnty. Elec. Coop., Inc. v. City of Cape Coral*, 159 So. 3d 126, 127 (Fla. 2d DCA 2014) ("In the declaratory judgment proceeding, the City and LCEC filed cross-motions for summary judgment. The circuit court determined that the facts were undisputed, and it ruled in the City's favor . . . . Our review of the summary judgment is de novo."). Our review of the trial court's interpretation of the lease terms is also de novo. *See Bethany Trace Owners' Ass'n v. Whispering Lakes I, LLC*, 155 So. 3d 1188, 1191 (Fla. 2d DCA 2014) ("We review the trial court's interpretation of a contract de novo. Because the interpretation of a contract is a question of law, this court may reach a construction or interpretation of the contract contrary to that of the trial court." (citations omitted)).

Certified argues that where a renewal option is silent as to some terms, the option remains enforceable. In such an instance, Certified tells us that the renewal option embraces the terms of the original lease.

Aventine contends that an enforceable renewal option must specify either the rent for the renewal term (or at least affirmatively declare the rental amount to be the same as during the initial lease period) or a definite procedure to establish a new rental amount.

---

*v. CWI, Inc.*, 358 So. 3d 464, 468 (Fla. 2d DCA 2023) ("[T]he court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties." (quoting *Snyder v. Fla. Prepaid Coll. Bd.*, 269 So. 3d 586, 592 (Fla. 1st DCA 2019))).

Indisputably, the renewal option omits both a rental amount and a definite procedure to establish the rent. The parties, however, disagree over the import of these omissions; whether and what terms must be included in an enforceable renewal option.

## I. Lack of Essential Contract Terms

"[W]hen contracting parties do not agree on an essential provision there is no 'meeting of the minds' that is the essence of a contract, and . . . it is not the province of the court to make the contract or to supply material terms or provisions omitted by the parties." *Edgewater Enters., Inc. v. Holler*, 426 So. 2d 980, 982 (Fla. 5th DCA 1982). Failure to include essential terms is generally fatal to a contract's enforceability. *See Davis v. Hearthstone Senior Cmtys., Inc.*, 155 So. 3d 1232, 1234 (Fla. 2d DCA 2015) ("[A] contract cannot stand if it is missing the essential terms of an agreement." (quoting *Greenbrook NH, LLC v. Est. of Sayre*, 150 So. 3d 878, 878 (Fla. 2d DCA 2014))).

Aventine cites to several cases echoing these general propositions. For instance, in *Jahangiri v. 1830 N. Bayshore, LLC*, 253 So. 3d 699, 702 (Fla. 3d DCA 2018), the Third District noted that

> [t]he amount of rental is an essential element of a lease, if not the basis for a lease, and an agreement to make a lease, or to renew or extend a lease, that fails to specify either the amount of the rental or a definite procedure to be followed to establish the amount of the rental, is too indefinite to be legally binding and enforceable.

(Quoting *Edgewater Enters., Inc.*, 426 So. 2d at 983.)

More recently, in *FM3 Liquors, Inc. v. Bien-Aime*, 319 So. 3d 706, 707-08 (Fla. 3d DCA 2021), the Third District held that the landlord was entitled to immediate possession of the property following expiration of the lease. The court explained that "renewal is foreclosed by this court's

recent opinion in *Jahangiri*" where the renewal option omitted the rent amount or a definite procedure to establish the rent amount. *Id.* at 707.

Similarly, in *LaFountain v. Estate of Kelly*, 732 So. 2d 503, 503-04 (Fla. 1st DCA 1999), the First District affirmed a trial court's order determining that a renewal option was unenforceable. The court held that "[t]he renewal option in the instant case did not specify the rental amount or a method for reaching agreement on the rent, and the option was thus unenforceable once the parties failed to agree to an essential element of the lease." *Id.* at 505.

These cases teach that "[w]here essential terms of an agreement remain open, and subject to future negotiation, there can be no enforceable contract." *Dows v. Nike, Inc.*, 846 So. 2d 595, 602 (Fla. 4th DCA 2003). Black letter law tells us that "an 'agreement to agree' is unenforceable as a matter of law." *ABC Liquors, Inc. v. Centimark Corp.*, 967 So. 2d 1053, 1056 (Fla. 5th DCA 2007).

For instance, in *John Alden Life Insurance Co. v. Benefits Management Associates, Inc.*, 675 So. 2d 188, 189 (Fla. 3d DCA 1996), the Third District held that a contractual provision to negotiate a bonus payment in the future "was merely an 'agreement to agree' in the future about the bonus and hence unenforceable as a matter of law."

Legal commentaries echo this proposition in the context of a real estate renewal option:

> Although a promise may be sufficiently definite when it contains an option given to the promisor or the promisee, if an essential element is reserved for the future agreement of both parties, as a general rule the promise can give rise to no legal obligation until such future agreement. Since either party in such a case may, by the very terms of the promise, refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.

6

On this ground, courts have traditionally refused to enforce agreements to agree in contracts dealing with real property; thus leases containing renewal covenants leaving the renewal rental for the future agreement of the parties have generally been held unenforceable for indefiniteness and uncertainty.

1 *Williston on Contracts*, § 4:29, at 851-54 (Richard A. Lord, 4th ed. 2007) (footnotes omitted); *see also May v. Sessums & Mason, P.A.*, 700 So. 2d 22, 26-27 (Fla. 2d DCA 1997) ("In the process of negotiating an agreement, a term that is frequently left indefinite and to be settled by future agreement, or by some other specified method, is the price in money—the compensatory exchange for the subject matter of purchase. This is true both of agreements for the rendition of service and of those for the purchase, sale, or leasing of realty or goods.  If the parties provide a practicable method for determining this price or compensation there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract.  The same is true if they agree upon payment of a 'reasonable' price or compensation.  There are cases, however, in which it is clear that the parties have not expressly or implicitly agreed upon a 'reasonable price,' and also have not prescribed a practicable method of determination.  Where this is true, the agreement is too indefinite and uncertain for enforcement." (quoting 1 *Corbin on Contracts*, § 4.3, at 567 (Joseph M. Perillo, Rev. ed. 1993))).

In *Edgewater*, 426 So. 2d at 981, the Fifth District identified "[t]he issue in this case [a]s whether a renewal provision in a lease, which specifies the length of the term of the renewal but leaves the amount of the monthly rental during the renewal period to be negotiated," was "sufficiently definite to be legally enforceable."  Specifically, that lease renewal option provided that

7

[t]enant shall have the option to take a renewal lease of the demised premises for the further term of three (3) years from and after the expiration of the term herein granted at a monthly rental to be arbitrated, negotiated and determined among the parties to this lease at said time.

*Id.* Importantly, for our purposes, the *Edgewater* court observed that

where the contract clause provides that the lessee shall have an option to renew for a specific period of time, but is silent as to all other terms, the clause has generally been held sufficiently definite to enforce and construed as encompassing the same terms and rent as the original lease.

The *Edgewater* court concluded that the renewal option was unenforceable because there was no meeting of the minds about the rent. *Id.* at 982. The parties anticipated future negotiations. *Id.* at 983.

## II. Silence is Golden

Having briefly outlined some contours of contract formation and enforceability, we introduce the concept of silence. The language used (or not used) in a renewal option has profound legal implications. *See id.* at 981 ("Options to renew can be worded in various ways, but what may seem to be negligible semantic differences can have a dramatic difference in the construction the court places on the particular clause."). Where the renewal option says nothing about the rent payable during the renewal period, the silence, as a matter of law, dictates that the same rent will carry over into the renewal period. Silence tells us what rent will be paid.

Aventine seemingly believes this approach is too facile. But Aventine ignores the fact that "[a] lease renewal involves a continuation of the landlord-tenant relationship on the terms specified in the option to renew, or **if no terms are specified, then '[a] lease renewal connotes a continuation of the landlord-tenant relationship on the same terms as the original lease**.' " *Woodard Tire Co. v. Hartley Realty Inc.*, 596 So.

8

2d 1114, 1116 (Fla. 3d DCA 1992) (alteration in original) (emphasis added) (quoting *Strano v. Reisinger Real Est., Inc.*, 534 So. 2d 1214, 1215 (Fla. 3d DCA 1988)); *see also Goldbloom v. J.I. Kislak Mortg. Corp.*, 408 So. 2d 748, 750 (Fla. 3d DCA 1982) ("[A]n otherwise silent agreement simply to renew an existing lease implies that the renewed term is for the same rental as the existing one. . . .  ['W]hen there are no terms stated in the option [to renew the lease] the parties (are deemed to) contemplate that the lease will be renewed on the same terms in the original agreement.' " (citations omitted) (quoting *Crossman v. Fontainebleau Hotel Corp.*, 273 F.2d 720, 727 (5th Cir. 1959))).

Aventine's insistence that the renewal option include either the rental amount during the renewal term or a definite procedure to establish the rent finds no support in the case law.  By saying nothing about the rent, the renewal option adopts the original rental amount:

> Where the parties to a lease did not leave the rental amount for the lease renewal period open to negotiation, the court looks to the terms of the original lease, based on the premise that once the renewal option is exercised, the original lease is deemed a unitary one for the extended term.

49 Am. Jur. 2d *Landlord & Tenant* § 138 (2023); *e.g.*, *Woodard Tire Co. Inc.*, 596 So. 2d at 1116; *Goldbloom*, 408 So. 2d at 750.  Aventine ignores this unique "unitary" character.  Exercise of the renewal option "does not create a new lease; rather it is a prolongation of the original agreement for a further period.  Once the option is exercised, the original lease is deemed a unitary one for the extended term and a new lease is not necessary." *Dime Sav. Bank of N.Y. v. Montage St. Realty Assocs.*, 686 N.E.2d 1340, 1342 (N.Y. 1997).  Certified's renewal option is not lacking.  By virtue of its silence, the lease terms apply to the renewal option with equal force and effect, as though restated therein.  *See Idol v. Little*, 396 S.E.2d 632, 634 (N.C. Ct. App. 1990) ("[A]n optional renewal provision in

9

a lease which is silent on the amount of rent due upon renewal of the lease and which does not provide that the renewal rent will be set by the parties' future agreement is valid and enforceable, and the amount of rent due upon renewal is impliedly the amount of rent due under the original lease.").

## III.    Aventine's Lack of Authority

Although enlightening, Aventine's cases are inapposite.  The cases do not deal with the critical fact we have here: silence as to the renewal rent defaults to the original rental amount.  Further, the cases involve renewal options anticipating more negotiations or without adequately defining a way to arrive at the rent amount.  They advance no compelling support for Aventine's position.

As recounted earlier, for instance, the renewal option in *Edgewater* required the "monthly rental to be arbitrated, negotiated and determined among the parties to this lease" upon the lessee's exercise of the renewal option.  *Edgewater*, 426 So. 2d at 981.  This classic, and unenforceable, agreement to agree on an essential term, is absent from Certified's original lease.

Aventine urges us to read *Edgewater* as categorically requiring that a renewal option include either the amount of rent or a definite procedure to establish the rent.  But the issue framed by the Fifth District was much narrower: whether a renewal option that "*leaves the amount of the monthly rental during the renewal period to be negotiated*, [wa]s sufficiently definite to be legally enforceable."  *Id.* (emphasis added). *Edgewater* stands for the rather unremarkable proposition that an agreement to agree on an essential term is no agreement at all. Consequently, we cannot adopt Aventine's sweeping reading of *Edgewater*.  *Cf. Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020) ("A

10

holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment." (quoting *State v. Yule*, 905 So. 2d 251, 259 n.10 (Fla. 2d DCA 2005) (Canady, J., specially concurring))).

Similarly, the renewal option in *LaFountain*, 732 So. 2d at 504, provided:

> The Lessor grants to the Lessee the option to renew said lease for two additional periods of five (5) years each, provided written notice of the intent to exercise the option is given at lease [sic] ninety (90) days before the expiration of the original term. **In the event Lessee exercises its option to renew, the lease payment for the renewal period will be negotiated between the parties**.

(Emphasis added.) Once again, this is an unenforceable "agreement to agree."[4]

In *Jahangiri*, 253 So. 3d at 701, the renewal option stated:

> **RENEWAL OPTIONS:** Upon six months notice and provided [lessee] is not in default of any provision of this Lease, LESSOR agrees that [lessee] may renew this Lease for two five-year renewal options, **each renewal at the then prevailing market rate for comparable commercial office properties**.

(Emphasis added). The Third District concluded that "renewal at the then prevailing market rate for comparable commercial office properties"

---

[4] At oral argument, Aventine maintained that the cases it relied upon all stood for the proposition that "the parties did not say enough." We disagree. Silence in a renewal option represents continuation of the original lease terms. An agreement to agree injects ambiguity and uncertainty, anathema to the certainty necessary for contract formation. Correspondingly, when pressed, Aventine conceded that there was no authority holding that a lease renewal provision's silence (or failure to repeat or include essential terms) ipso facto rendered it unenforceable.

was too indefinite to be enforceable as "the lease does not provide for the amount of renewal rent, the procedure for determining rent has to be definite enough, without further negotiation or litigation on the methodology used, to fix the rent with certainty." *Id.* at 703. The Third District recited a litany of considerations that made the renewal option ambiguous, uncertain, and, therefore, unenforceable. *Id.* at 703-04 ("[T]here is still more for the parties to decide before the rent could be fixed with certainty. Who is responsible for obtaining the 'comparables'? Must the lessor or the lessee provide the comparables? May the other party object and who will resolve any such objections? There are also issues as to the validity of the comparables. What factors are to be considered in determining that another property is truly comparable? Is it the square footage of the space, its location, its condition, its use, or must other factors also be considered? And what is the 'prevailing market rate'? Is it the mean, medium, or mode of the three comparable commercial properties? Is it the highest or lowest price of the comparables? Is it the comparable sales rate or the rental rate that sets the 'market'?").

None of these uncertainties lurk here. Nothing in the renewal option is left unsettled.

In *FM3 Liquors*, 319 So. 3d at 708, the Third District confronted the following lease renewal provision:

> This Lease shall renew with 90 day prior notice from tenant for an additional period of five years renewal term, unless tenant gives written notice of termination no later than 90 days prior to the end of the term or renewal term. . . . The lease terms during any such renewal term shall be the same as those contained in this Lease **except that the lease installment payments shall be current market value at the time of the renewal**.

12

(Emphasis added.) Relying on *Jahangiri*, the *FM3 Liquors* court concluded that the option was uncertain.[5] *Id.* at 707. None of these uncertainties arise in Certified's renewal option. Quite simply, less is more.

One last point merits discussion. Aventine tells us that because real estate values fluctuate, "courts cannot assume the parties would have agreed to the same terms during a renewal period simply because the parties previously agreed to those terms multiple years ago." Aventine chides that "[w]here a contract is silent as to a particular matter, the trial court should not impose on the parties contractual rights and duties that they themselves have omitted." (Quoting *Carefree Vills., Inc. v. Keating Props., Inc.*, 489 So. 2d 99, 102 (Fla. 2d DCA 1986).) Aventine would have us rewrite the original lease, finding perceived gaps in contract terms. We decline this invitation to judicial mischief.

---

[5] The *FM3 Liquors* court cited the *Edgewater* language quoted in *Jahangiri*:

> Renewal is foreclosed by this court's recent opinion in *Jahangiri*[] ("[T]he amount of rental is an essential element of a lease, if not the basis for a lease, and an agreement to make a lease, or to renew or extend a lease, that fails to specify either the amount of the rental or a definite procedure to be followed to establish the amount of the rental, is too indefinite to be legally binding and enforceable." (quoting *Edgewater*[, 426 So. 2d at 983])).

*FM3 Liquors,* 319 So. 3d at 707 (second alteration in original). However, as detailed above, a renewal option is not per se unenforceable simply because it omits the amount of rent. Indeed, in *Goldbloom*, 408 So. 2d at 750, the Third District approvingly recited the doctrine "that when there are no terms stated in the option [to renew the lease] the parties (are deemed to) contemplate that the lease will be renewed on the same terms in the original agreement.' " (Quoting *Crossman*, 273 F.2d at 727.)

13

As landlord, Aventine is bound by the lease terms. We refuse to inject uncertainty into a commercial contract where none is found on its face. *See Razin v. A Milestone, LLC*, 67 So. 3d 391, 396 (Fla. 2d DCA 2011) ("[W]here there is 'an unambiguous contractual provision . . . a trial court cannot give it any other meaning beyond that expressed and must construe the provision in accord with its ordinary meaning.' " (quoting *Emergency Assocs. of Tampa v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995))).

## Conclusion

The trial court erred in declaring the parties' lease renewal option unenforceable.

Reversed and remanded.


ATKINSON and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.